## EISENBERG v. COMMISSIONER OF INTERNAL REVENUE.

## SCHAEFFER v. SAME.

### Nos. 9139, 9140.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 22, 1946.
Decided April 22, 1947.

Abraham L. Shapiro, of Philadelphia, Pa. (Robert Ash, of Washington, D. C., Shapiro & Shapiro, of Philadelphia, Pa., and W. T. Durant, C. F. Bauersfeld, and J. Y. Merrell, all of Washington, D. C., on the brief), for petitioners.

Melva M. Graney, of Washington, D. C. (Douglas W. McGregor, Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, ALBERT LEE STEPHENS, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Two petitions for review of two decisions of the Tax Court have been consolidated here. The single question presented is whether the petitioners are liable for deficiencies in income taxes assessed against them by the Commissioner. The Tax Court upheld the Commissioner's determination that petitioner, Morris Eisenberg, owed $6,671.58 and $18,891.32 for 1940 and 1941 respectively, and petitioner Herman Schaeffer owed $6,540.51 and $18,936.08 for the same years. 5 T.C. 856.

The factual background is as follows:

Petitioners Eisenberg and Schaeffer entered into an oral partnership agreement on January 1, 1937, for the conduct of a retail establishment under the name of "Bailey's Furniture Company."

Prior thereto, sometime in 1930, Schaeffer had established four separate savings accounts for each of his children in his

name as trustee.[1] These funds were withdrawn by Schaeffer between 1937 and 1939 and used by him in the partnership business.[2]

On December 30, 1939, the petitioners executed written articles of co-partnership. Under this agreement, among other things, the partnership was to continue from year to year; the petitioners were to have an equal share in the business, and were to draw an agreed salary; and payment of the respective shares of the profits was to be made only if and when the parties so determined.[3]

Three days later, on January 2, 1940, petitioner Eisenberg created three separate, irrevocable, written trusts for the benefit of his three children, transferring to himself as trustee of each trust a percentage of his interest in the partnership business: to Leon he gave 20%; to Estelle, 15%; and to Libby, 15%. On the same day, petitioner Schaeffer executed four separate, irrevocable, written trusts for the benefit of his four children, transferring to himself as trustee of each trust a percentage of his interest in the partnership business; to Raymond, Alfred and Harold he gave 14% each, and to Toby, 8%.[4] Federal gift tax returns were filed by the petitioners in which they reported the gifts in trust for the benefit of their children.

As of January 1, 1940, capital accounts were set up on the books of Bailey's Furniture Company for each of the trusts.[5] The bank with which the firm did business was furnished a copy of the financial statements showing the trusts' interest in the business, and, in addition, a fictitious name certificate was filed with the proper state authorities.

The seven trusts were identical, except for the name of the beneficiary and the amount of the gift.

Specifically it was provided, among other things, that income should be accumulated until the beneficiary attained the age of forty years, or thirty years if the original trustee died; at such time, the trust fund would be payable to the beneficiary, but the latter could elect to become an active partner in Bailey's Furniture Company to the extent of the amount of the fund; however, the partners or surviving partners had

---

[1] In the written opinion of the Tax Court, it is stated that both petitioners had, in 1930 and 1932, created trusts for their children in the form of savings bank accounts. However, the findings of fact made by the Tax Court show this only as to Schaeffer.

[2] All of the funds in the trust account for Raymond Schaeffer, in the amount of $6,006.78, were withdrawn on July 30, 1937; all of the funds in the trust account for Toby Schaeffer, in the amount of $6,055.99, were withdrawn on January 12, 1938; all of the funds in the trust account for Harold Schaeffer, in the amount of $6,246.15, were withdrawn on April 18, 1939; funds in the trust account of Alfred D. Schaeffer were withdrawn as follows: $1,000 on June 10, 1938, and $2,327.15 on November 10, 1938, together with an additional sum of $57.62.

[3] Paragraph 4 of the partnership agreement provided as follows as to distribution of profits.

"There shall be kept during the continuance of this co-partnership a correct book of accounts wherein shall be entered all items of receipts and disbursements and each of the parties hereto may at any and all times have uninterrupted access thereto. Once a year or oftener, if the said parties hereto unanimously agree in writing, there may be made an account of all items of receipts and disbursements of assets and liabilities and a share of the profits, if any, may be paid to each of the parties hereto respectively only if and when the said parties hereto determine and order the payment of same in writing."

[4] As of January 2, 1930, the petitioners' children were all minors: Leon, Estelle and Libby Eisenberg were 17, 10 and 9 respectively; Raymond, Toby, Harold and Alfred Schaeffer were 18, 16, 12 and 9 respectively.

[5] From the capital account of petitioner Eisenberg there was transferred the amount of $30,000 to capital accounts in the name of the respective trusts for the benefit of his children; $12,000 to the trust for Leon; $9,000 to the trust for Estelle; and $9,000 to the trust for Libby. From the capital account of petitioner Schaeffer there was transferred the amount of $30,000 to capital accounts in the name of the respective trusts for the benefit of his children; $8,400 to the trust for Raymond; $4,800 to the trust for Toby; $8,400 to the trust for Harold; and $8,400 to the trust for Alfred.

an exclusive right to determine whether or not the beneficiary would be admitted to the partnership, and there were special provisions relating to the time for and interest on the payment of the fund in the event that the partners refused admission or the beneficiary refused to enter the partnership business; also, the beneficiary could elect to retain an inactive interest in the business. The trustee was authorized, in the exercise of his sole discretion, to expend for or pay to the beneficiary any part of the trust fund prior to his attaining the age of thirty or forty years, as the case may be; to invest the principal of the trust without regard to "legal investments"; to exercise any right to subscribe for stocks and bonds or other allotments received by reason of investments held in trust, or sell such right for such price as may seem best to him; to join in or become a party to any agreement, reorganization, merger, readjustment or foreclosure proceeding; and to pledge any of the trust fund as collateral security for loans or for use in the management and operation of Bailey's Furniture Company. In the event of the death of the beneficiary before he attained the age of distribution it was provided that the fund should be divided into as many shares as there were children of the beneficiary living at the time of his death, and continued as the subject of the trust with directions to the trustee to accumulate the income for their benefit until such time as the original beneficiary would have reached the age of distribution; then to pay over the fund to them under the conditions it was payable to the original beneficiary. In the event that the beneficiary died unmarried, or married but without issue, the trust fund would become part of the respective trusts established for the settlor's other children, who were specifically named.

Having established the trusts, on the next day, January 3, 1940, petitioners Eisenberg and Schaeffer, individually and as trustees of each of the trusts, executed an "Addenda to Articles of Co-Partnership Agreement". [6] This, in effect, purported to make the various trusts members of the partnership of Bailey's Furniture Company and subjected the trusts to the partnership agreement.

During the years 1940 and 1941 no services were rendered by any of the petitioners' children for Bailey's Furniture Company, except by Raymond Schaeffer during the period from June to December, 1941. For these services Raymond received $40.00 a week from the business.

No distributions of either income or corpus were made by the petitioners as partners or as trustees during 1940 and 1941 except for the payment of income taxes in behalf of the various trusts. Petitioners, as trustees, filed income tax returns for 1940 and 1941 in behalf of the trusts, reporting the income of Bailey's Furniture Company which was credited to the respective capital accounts of the trusts on the books of the company. Partnership returns were filed by Bailey's Furniture Company for 1940 and 1941 in which was reported net income of $84,366.-24 and $139,909.44, respectively.

In August or September, 1942, Raymond Schaeffer, then 21, contemplating marriage and military service and being concerned as to his financial status, consulted his father with reference to a statement his father had purportedly made sometime in 1939,.

---

[6] It provided, in part, after reciting that the various trusts were made by each partner with the knowledge and consent of the other:

"Whereas, it is the intention of the said Morris Eisenberg and Herman Schaeffer, both as co-partners and as Settlors and Trustees, that the said co-partnership agreement heretofore executed on the 30th day of December, 1939, be the only agreement relating to the co-partnership of the parties.

"Now therefore it is agreed that the said agreement heretofore executed on the 30th day of December, 1939, and referred to as articles of co-partnership agreement herein, shall be construed in all of the terms to include all of the trust interest as parties to the said agreement. *And it is distinctly understood and agreed that all of the terms contained and provided for in the said articles of co-partnership shall be binding upon the Settlors, Trustees, Co-partners and Cestuis Que Trust mentioned herein."* (Emphasis supplied).

that the latter was going to give him an interest in the partnership business. The father said that Raymond could not get financial assistance from such gift at that time. Raymond consulted an attorney; as a result of a conference at the lawyer's office, at which the petitioners were present, the lawyer recommended a suit to reform the original trust agreements.

In the June Term of 1942, Raymond filed a bill in equity in the Common Pleas Court of Philadelphia County against his father, seeking reformation of the declaration of trust executed in his behalf.

The bill alleged that the declaration of trust was made on January 2, 1940, but that the declaration did not carry out the intent of the settlor nor a prior parol agreement between father and son for these reasons: the written trust conveying 14% of the partnership interest to Raymond failed to provide procedure for the collection of income; the settlor, as trustee, could not carry out his obligation by reason of conflicting and adverse interests as partner and his duties and obligation to his partner; the trust agreement subjected the trust property to the control of his father's partner not intended under the parol agreement; it subjected the trust income to the hazards of commercial business; paragraph 6 of the written agreement (giving the trustee power to invest the principal of the trust as he may deem prudent without regard to "legal investments") referred to the principal of the trust when in fact it was intended to refer to the income, with the result that the trustee was given the right to take the principal out of the trust estate and invest it in other ventures; and it failed to give the trustee the right to invest the income, as was the intent of the parties. Further, it was alleged that the income earned since the creation of the trust had not been set aside and paid to the trustees, notwithstanding that demand had been made on the partners. Accordingly, reformation of the document, substitution of other trustees, and such other equitable relief as the court might grant were sought.

Schaeffer, as defendant, admitted in substance what is set out above; averred that the construction of the agreement was for the court; denied that he could not properly carry out its terms as trustee; admitted that his partner, Eisenberg, objected to withdrawal or setting aside of income; and submitted himself to any decree of the court. Subsequently the other children of Schaeffer and Eisenberg were made parties plaintiff and Eisenberg was joined as a defendant. Testimony having been taken, the plaintiffs presented requests for findings of facts, to which there was no objection. On May 19, 1943, the State Court approved reformed declarations of trust "as of January 2, 1940."

The reformed declarations of trusts made material changes. The wife of Eisenberg and another person were substituted as trustees in the Eisenberg trusts; the wife of Schaeffer and another person were substituted as trustees in the Schaeffer trusts. Each reformed trust declared, among other things, that the settlor intended to support, maintain and otherwise discharge his legal obligations to the beneficiary during the latter's minority, personally, and without recourse to the principal or income of the trust; that after the beneficiary reached his or her majority, and until termination of the trust, the trustees shall pay over to the beneficiary from income for his or her support, education, welfare and happiness, such sums upon such terms and conditions and at such times as they, in the exercise of their sole discretion deem advisable; that the trustees shall not pay to or use for the settlor any part of the principal or income of the trust; that the trustees are entitled to inspect the partnership books to determine income and profits; and that the settlor and the settlor's partner or partners shall, on demand, pay over to the trustees from time to time the profits and income earned by the trustee's net worth in the business.

On these facts, the Tax Court determined that under the language of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a), as it has been interpreted in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, the petitioners were taxable on all the income of the partnership business. However, in reaching this conclusion, the Tax Court

considered the trusts as they were originally written on January 2, 1940, and not as they were reformed and approved by the State Court's decree of May 19, 1943. It was of the opinion that the reformation could not affect the tax years involved, despite the retroactive effect of the State Court's order, but no opinion was expressed as to the effect, in other years, of the changes brought about by the reformation of the trust indentures.

In deciding the dominant issue, the Tax Court addressed itself to the question "whether by the arrangements petitioners made they respectively retained such 'bundle of rights' in the property transferred to the trusts and made subject to the partnership agreement as to render them taxable on the income therefrom under Section 22 (a) of the Internal Revenue Code, as construed by Helvering v. Clifford, supra." It made no finding as to the nature of the partnership, perhaps because the decisions in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, had not been announced. To find that enigmatic "bundle of rights," it considered the trusts and partnership agreements together, but did not discuss in detail the various provisions of the documents.

The Tax Court likened the instant case to Hash v. Commissioner, 4 T.C. 878, aff'd 4 Cir.1945, 152 F.2d 722 and distinguished it from the case of Robert P. Scherer, 1944, 3 T.C. 776, on the ground that in the latter case the Commissioner had conceded that completed gifts had been made. It noted that the petitioners herein had treated the savings bank trust accounts as their own, and it regarded as vital the fact that neither trust nor children had a right to any of the income of the partnership unless the settlor, both as an individual partner and as trustee, agreed in writing thereto. Said the Court, "Each petitioner, as an individual partner and as trustee, could prevent the distribution of any partnership income and compel the trust to leave the income in and subject to the commercial hazards of the business until the termination of the trust,

which was to be when the beneficiary arrived at the age of 40 years, or when he arrived at the age of 30 years if the settlor had previously died.'" Importance was attached to the fact that the settlors had made themselves sole trustees, and that no distributions of either corpus or income were made by the petitioners as partners or as trustees to the trusts during the taxable years involved except for income tax purposes in behalf of the trusts.

■ We think the general principle applied by the Tax Court is now beyond dispute, that a "grantor of a trust remains taxable on the trust income under § 22(a) where the benefits directly or indirectly retained by him blend imperceptibly 'with the normal concepts of full ownership.'" United States v. Morss, 1 Cir., 1947, 159 F. 2d 142.

■■ Little can be accomplished toward ultimate determination of the tax responsibility, at least in this class of cases, by ferreting out analogous parts of other cases, particularly since "no one fact is decisive." [7] It is well-settled that the Tax Court's determination, if supported by the facts, is conclusive. That we would not be inclined to draw the same conclusions or make the same inferences is of no significance whatever. As stated by Judge Dobie in Hash v. Commissioner, supra, at page 725 of 152 F. 2d, "Each case in this field turns on its own facts; and our function ceases when we determine, as we do here, that the overall picture gleaned from the record furnishes ample and substantial basis for the inferences drawn by the Tax Court. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Doll v. Commissioner, 8 Cir., 149 F.2d 239; Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491." To the cases cited may be added Commissioner v. Tower, supra, and Lusthaus v. Commissioner, supra.

The Tax Court in this case evidently concluded that the gifts in trust were not complete. We do not inquire how large

---

[7] As to this case, cf. Losh v. Commissioner, 10 Cir., 1944, 145 F.2d 456; Hash v. Commissioner, supra; but see Armstrong v. Commissioner, 10 Cir., 1944, 143 F.2d 700; Robert P. Scherer, 1944, 3 T.C. 776.

a "bundle of rights" the petitioners withheld; it is sufficient that the rights retained enabled them to make distributions to the minor beneficiaries according to their discretion, and to continue to use both the corpus and the income of the trusts in the partnership business exactly as though they were the owners thereof, without right in the beneficiaries to receive any distribution until the termination of the trusts as hereinbefore mentioned. Petitioners contend that they could have prevented distribution of income to the trusts only by denying distribution to themselves. The effectiveness of this argument may be judged in the light of the fact that under the terms of the partnership agreement, to which the trusts were subservient, petitioners could adjust their salaries as they saw fit and siphon off all net income merely by executing a written agreement on or before the first of each year.

Accordingly, it is our opinion that the Tax Court, on the facts of this case, could reasonably conclude, as it did, that the arrangements made by the petitioners did not effect a change in their economic status, but multiplied, in form, a single economic unit. Helvering v. Clifford, supra; Losh v. Commissioner, 10 Cir., 1944, 145 F.2d 456.

As a final point, the petitioners contend that the Tax Court erred in refusing to give effect to the order of the Common Pleas Court of Philadelphia, of May 19, 1943, which approved the reformed declarations of trust "as of January 2, 1940", and in determining their tax liability for the years 1940 and 1941 on the basis of the documents as they were originally executed.

Here we are in agreement with the reasoning and decision of the Tax Court. Certainly no authority is needed today for the proposition that income tax liability rests upon events as they acually happened. The fact is that, for the years involved, the parties were guided by and acted under the agreements as they were originally drawn.

The orders of the Tax Court are affirmed.