## UPTEGROVE LUMBER CO. v. COMMIS-SIONER OF INTERNAL REVENUE.

### No. 10933.

United States Court of Appeals Third Circuit.

Argued April 20, 1953.

Decided June 29, 1953.

Alvin D. Lurie, New York City (Jacob Rabkin and Mark H. Johnson, New York City, on the brief), for appellant.

Robert B. Ross, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Sp. Assts. to the Atty. Gen., on the brief), for appellee.

Before KALODNER, STALEY, and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The Commissioner of Internal Revenue assessed a deficiency in the taxpayer's 1944 income and excess profits tax more than three years but less than five after taxpayer had filed its 1944 return. This delay has necessitated a determination whether the normal three-year statute of limitations, Section 275(a) of the Internal Revenue Code, 26 U.S.C. § 275(a), or the longer five-year period made applicable to certain deficiency claims by Section 275(c) [1] con-

---

1. Sec. 275. "Period of limitation upon assessment and collection. "Except as provided in section 276—

"(a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

\* \* \* \* \* \*

"(c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed."

trols this case. The Tax Court sustained the assessment as timely under Section 275(c) and the taxpayer has filed this petition for review.

The taxpayer is a manufacturing corporation. The present deficiency assessment grows out of the Commissioner's late discovery of legal impropriety and substantial resultant error in taxpayer's computation of its gross income in its 1944 return. In this computation, as it appeared on the face of the return, the taxpayer first set out a correct statement of its gross sales. From that figure it then subtracted an amount designated as "the cost of goods sold". This "cost" was itself an aggregate of items including a reserve for retroactive wage increases pursuant to demands then pending before the National War Labor Board, but later disallowed. It is not disputed now that this contingent reserve could not lawfully be included in the cost of goods sold. On the face of its return the taxpayer subtracted this inflated cost item from correctly stated gross sales and accordingly arrived at an incorrect gross profit from sales. The error was carried forward when this stated profit was added to other income to arrive at a "total income" figure. The end result was an understatement of this total by more than 25%. This understatement is the basis of the deficiency assessment made more than three years later in reliance upon the language of Section 275(c) which permits assessments within a five-year period in situations where a taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return".

The Commissioner and the Tax Court say that the language "omits from gross income any amount properly includible therein" should be construed broadly as if it read "understates the final figure in his gross income computation". The taxpayer says the words of the statute are to be taken as if they read "omits from his computation of gross income an item or items of taxable gain". We must decide which is the correct construction of the statute.

To begin with, it is to be noted that in the scheme and administration of the in-come tax law the determination of gross income from business is a process of computation. Indeed Treasury Regulation 111, Section 29.22(a)–5 states that "In the case of a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources * * *." And see the numerous provisions of Section 22 of the Internal Revenue Code, 26 U.S.C. § 22, controlling the computation of gross income generally. In addition, no single item labeled "gross income" appears in the form of return prescribed for the use of the ordinary business corporation. Rather an entire section of the return is headed "Gross Income", though unquestionably the final entry in the required computation, designated "total income", is the gross income item carried forward into subsequent sections of the return for the computation of net income. This is the setting in which the language of Section 275(c) must be construed.

If no special significance is attributed to the verb "omits" as it appears in Section 275(c) and principal emphasis is placed upon the final item of the gross income computation as *the* gross income figure it is easy to arrive at the government's construction that any error which causes this final figure to be smaller than it should be constitutes an omission of an amount from gross income. On the other hand, if stress is laid upon the connotation of omission as a leaving out and at the same time the character of gross income as a computation is emphasized, it can as well be said that a taxpayer omits an amount from gross income within the meaning of Section 275(c) only when he leaves some item of gain out of his computation of gross income.

We think this spelling out of divergent lines of construction suffices to show that neither requires distortion of the normal meaning of words. Reasonable draftsmen might have viewed the language actually used in Section 275(c) as appropriate to express either the meaning for which the government now contends or that urged by the taxpayer. That is to say there is a real ambiguity in the statute. According-

ly, resort to legislative history is appropriate as an aid to choice between alternative constructions. And once the appropriateness of resort to legislative history is established, we think the history of Section 275(c) persuasively indicates that Congress was addressing itself particularly to the situation where a taxpayer shall fail to include some receipt or accrual in his computation of gross income and not in a more general way to errors of whatever kind in that computation.

Our starting point is the Report of a House Ways and Means Subcommittee in which this exception to the normal three year limitation period originated. Defining the coverage of its proposal the Subcommittee said:

"* * * It is, therefore, recommended that the statute of limitations shall not apply where the taxpayer has failed to disclose in his return an amount of gross income in excess of 25 percent of the amount of the gross income stated in the return. The Government should not be penalized where a taxpayer is so negligent as to leave out items of such magnitude from his return." House Hearings before Committee on Way and Means, 73d Cong., 2d Sess., p. 139.

This was confirmed later before the full Committee when Congressman Jere Cooper explained the thinking of the Subcommittee in this way:

"What we really had in mind was just this kind of a situation: Assume that a taxpayer left out, say, a million dollars; he just forgot it. We felt that whenever we found that he did that we ought to get the money on it, the tax on it." House Hearings, supra, p. 149.

The full Committee in turn revealed similar thinking in its Report saying:

"It is not believed that taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute". House Report No. 704, 73d Cong., 2d Sess., p. 35.

The bill as passed by the House treated the omissions in question like fraud or failure to file a return in that it permitted assessment without any limitation of time. However, in the Senate, the Committee on Finance, to which the bill was referred, took a less extreme position stating in its report:

"* * * Your committee is in general accord with the policy expressed in this section of the House bill. However, it is believed that in the case of a taxpayer who makes an honest mistake, it would be unfair to keep the statute open indefinitely. For instance, a case might arise where a taxpayer failed to report a dividend because he was erroneously advised by the officers of the corporation that it was paid out of capital or he might report as income for one year an item of income which properly belonged in another year. Accordingly, your committee has provided for a 5-year statute in such cases."

As countervailing these indications that Congress had in mind failure to report receipts, the Commissioner refers to the occasional use of the phrase "understates gross income" in the relevant Committee Reports. But wherever this language appears it is used in the generality of an introductory statement and is immediately restricted by specific explanation that the Committee is talking about "failure to disclose" income or "leav[ing] out items". In this connection, the House Subcommittee Report is particularly striking. There the preliminary reference to understatement is "that the limitation period on assessments should not apply *to certain cases* where the taxpayer has understated his gross income". (Italics added.) In the next sentence it is indicated that the cases contemplated are those "where the taxpayer has failed to disclose in his return an amount of gross income". In these circumstances we think it was the manifest purpose of Congress to make an exception to the three year statute of limitations which would apply only to situations where the taxpayer had failed to make a return of some taxable gain.

And this restriction is quite logical. For there are many places throughout an income tax return where a taxpayer may make arithmetical errors or claim improper deductions with the result that his tax liability is understated. If such errors are made in good faith at any place other than the gross income section, it is clear that the government must challenge them, if at all, within the normal three year limitation period. No reason appears or has been suggested why Congress would wish to allow a longer time to discover errors of the same type in the gross income section of the return. Yet this would be the strange result of the construction which the Commissioner would give to Section 275(c).

Finally, the Commissioner urges that the adjudicated cases support his position. It is true that this is not the first Tax Court decision sustaining the Commissioner's position. Cf. Owens-Fields Importing Co., 1950, 1950 P-H T.C. Memo Par. 50,279, 9 CCH TCM 1030; Ohio Fruit Products Co., 1951, 1951 P-H T.C. Memo Par. 51,040, 10 CCH TCM 125. The Tax Court has been consistent, but we think it has been mistaken.

Beyond this, we have found no decision of a Court of Appeals which has considered this problem. The Commissioner suggests that his position is supported by such cases as Ewald v. Commissioner, 6 Cir., 1944, 141 F.2d 750; Ketcham v. Commissioner, 2 Cir., 1944, 142 F.2d 996 and O'Bryan v. Commissioner, 9 Cir., 1945, 148 F.2d 456. We do not agree. These cases all involved failures to enter certain items of gain in the gross income sections of returns. Each taxpayer relied upon the fact that somewhere else in his return, or in some statement attached to it, he had revealed the existence of the item in question though he did not report it as gain taxable to himself. On this basis it was arguable that these cases did not involve the mischief of effective concealment by nondisclosure which the extended limitation period of Section 275(c) was designed to offset. For taxpayers having revealed the omission when they filed their returns, there would be no reason of policy for allowing an extra two years for the Collector to act upon those omissions. But the courts could not reach these policy considerations because the applicability of the language of the statute, "omits from gross income", to the given facts was so clear. There was no relevant ambiguity in the statute to warrant the consideration of its purpose in order to discover its meaning. Thus, the cited cases do not help us here.

The decision of the Tax Court will be reversed.