Lois J. NEWMAN (Formerly Lois J. Senderman), Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14112.

United States Court of Appeals Ninth Circuit.

April 29, 1955.

**132**

Irell & Manella, Louis M. Brown, Gang, Kopp & Tyre, Milton A. Rudin, Martin Gang, Los Angeles, Cal., Lawrence E. Silverton, Van Nuys, Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen., Fred Youngman, Ellis N. Slack, Meyer Rothwacks, Sp. Assts. to Atty. Gen., Kenneth W. Gemmill, Acting Chief Counsel, I.R.S., Washington, D. C., for appellee.

Before HEALY and FEE, Circuit Judges, and DRIVER, District Judge.

DRIVER, District Judge.

This is a petition to review a decision of the Tax Court adjudging a deficiency in gift tax of $50,079.84. The principal question presented is whether petitioner's gift to her minor daughter was completed in 1943, when the property was transferred in trust for the minor, or in 1946, upon the termination of the trust and distribution of the property to the minor's guardian.

The following is a summary of the findings of the Tax Court based in large part upon a stipulation of facts filed by the parties:

Prior to her second marriage in December, 1944, Petitioner's name was Lois J. Senderman. She was divorced from her first husband in 1940. Her only child, a daughter named Lois E. Senderman, was born on May 14, 1935. Petitioner had inherited from her parents 2,396-⅞ shares of stock of Aztec Brewing Company (hereinafter "Aztec"), a California corporation. The stock certificates were in the name of her attorney, Richard S. Goldman (hereinafter "Goldman"), and early in January 1943 she instructed him to transfer and hold 800 shares in trust for her minor daughter. Goldman orally declared himself to be trustee of the trust effective immediately, and some six or seven months thereafter executed a written declaration of trust which was dated back to January 1, 1943.

Petitioner filed Federal and California state gift tax returns for the calendar year 1943, in which she reported the gift of the 800 shares of corporate stock to her daughter by reason of the creation of the trust, and in the Federal return reported a value of $30,000, with no gift tax payable thereon.

In the year 1944, the Aztec Brewing Company, a limited partnership, was formed, the Aztec corporation was dissolved, and all of the assets and liabilities of the corporation were transferred to the partnership. The stockholders in the corporation became partners in the new company and the trust for Lois E. Senderman received an eight per cent limited partnership interest. The fair market value of the trust's interest throughout the calendar year 1946, was $151,051.09.

Goldman died March 1, 1946, and shortly thereafter his son was appointed executor of his estate. On April 5, 1946, on petition of the executor, his attorney Clarissa Shortall was appointed successor trustee by order of the San Francisco, California superior court. On May 2, 1946, by order of the same court she was appointed guardian of the estate of Lois E. Senderman, and the assets of the trust were transferred to her as such guardian. She had been associated with Goldman and had participated with him in the setting up and management of the Senderman trust. There was a provision in the original trust indenture for appointment of a guardian and for transfer to the guardian of the corpus of the trust upon the death of the trustee.

After a revenue agent, who examined the tax returns of petitioner and her

minor daughter, had raised a question as to the revocability of the trust, Clarrissa Shortall, on April 22, 1947, as guardian for the minor, filed a petition for instructions in the state superior court. The petition in part stated that it was the intention of Lois J. Newman as trustor and donor, and of Goldman as trustee, that the trust be irrevocable; and "that the failure so to state specifically in said Declaration of Trust occurred through inadvertence and error and contrary to the express instructions of said Lois J. Newman." On June 23, 1947, the guardian filed an amended petion for instruction in which, for the first time, reference was made to the existence of an oral trust. The amended petition also recited that through inadvertence and error the written trust failed to contain an express provision that it was to be irrevocable.

On July 10, 1947, the amended petition was heard, and both oral and documentary evidence was offered. Clarissa Shortall, as guardian, and the Petitioner, each appeared in person and by attorney. The state court entered an order by which it adjudged that early in 1943 Lois J. Senderman orally created an irrevocable trust by instructing Goldman to act as trustee of 800 shares of corporate stock, the certificates of which he then had in his possession; that Goldman orally agreed to act as such trustee; that the oral trust became effective immediately upon its creation, and continued in effect until the appointment of the guardian, and transfer to her of the trust property in 1946; that six or seven months after the creation of the oral trust, Goldman executed a written trust which did not terminate or modify the oral trust; and that Clarissa Shortall as guardian held the property irrevocably for the use and benefit of the minor.

On the basis of its foregoing factual findings, the Tax Court held that the transfer of the property by petitioner for the benefit of her minor daughter constituted a taxable gift within the meaning of the applicable federal statutory provisions,[1] and that the gift was completed and subject to tax in the year 1946. The Court reasoned that neither the oral nor the written declaration created an irrevocable trust under California law [2] since neither was "expressly made irrevocable by the instrument creating the trust", and that under Treasury Regulations 108,[3] the gift was not complete until the revocable trust

1. 26 U.S.C.A. § 1000, Imposition of tax

"(a) * * * For the calendar year 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. * * *"

And § 1002, Transfer for less than adequate and full consideration

"Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

2. Deering, Civil Code of California (1937) § 2280 [Revocation of trusts.]

"Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. * * *"

§ 2216. Voluntary trust, what. "A voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another."

§ 2217. Involuntary trust, what. "An involuntary trust is one which is created by operation of law."

3. Treasury Regulations 108:

Sec. 86.3 [as amended by T.D. 5833, 1951–1 Cum.Bull. 83] Cessation of Donor's Dominion and Control.—

"(a) In general.—* * *

"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave him no power to change the disposition thereof, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of

was terminated in accordance with its terms upon the death of the trustee.

▉ Petitioner contends that the oral trust was expressly made irrevocable and that the Tax Court erred in not so finding upon the "uncontradicted and unimpeached testimony." It is true that Petitioner and Clarissa Shortall testified directly and positively that when the oral trust was created early in January 1943 in Goldman's office, the Petitioner expressly declared the trust to be an irrevocable one and that Goldman in his acceptance as trustee designated it as "irrevocable", but the Tax Court declined to accept their testimony. In its opinion the Court said that because of inconsistencies in the evidence, the presence of contradicting documents, and the inferences to be drawn from the whole record, it was obliged reluctantly to conclude "that the spoken word must yield to the documented conclusion that no irrevocable oral or written trust existed." Specifically, what the Court indicated it had in mind was that, the written instrument failed to mention either the oral trust or the word "irrevocable", although it was drafted by two experienced lawyers, one of them the trustee under the trust, who were fully aware of the wishes of the settlor; that the oral trust on which the petitioner so heavily depended in the Tax Court hearing was not mentioned in the petition filed in the state court in April, 1946, for appointment of a successor trustee, nor in the petition for appointment of a guardian, nor in the order appointing the guardian, nor in the original petition by the guardian for instructions; that each of those documents referred only to a written trust;

and that it was not until June 23, 1947, after the revenue agent had raised the question of the revocability of the trust with possible Federal tax consequences, that in the amended petition for instructions an oral trust was first mentioned.

▉ The circumstances shown by the record furnished substantial evidentiary support for a reasonable inference contrary to the testimony that the oral trust was expressly made irrevocable. In such a situation it is the peculiar and exclusive function of the Tax Court to weigh the evidence, determine its probative value, and draw inferences therefrom.[4]

Petitioner argues that the written instrument executed by Goldman and dated back to January 1, 1943, was not actually a declaration of trust at all, but was merely an acknowledgment of a previously completed gift; or, if considered as a declaration of trust, that it was expressly irrevocable within the meaning of the California statute. The first phase of the argument, although alternatively presented, is rather surprising in view of the fact that in most of the documents mentioned in the next to the last paragraph above, including the guardian's amended petition for instructions, the instrument was described as a "trust indenture" or "declaration of trust", and in his opening statement in the Tax Court hearing, one of Petitioner's attorneys said: "Some six or seven months later he [Goldman] declared himself as trustee in writing. This written declaration of trust is Exhibit 2-B to the Stipulation of facts." The same stipulation of facts signed by Petitioner's attorneys, recited that "In 1943, Richard

---

property (whether in trust or otherwise) the donor reserves any power over the disposition thereof, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined.

"A gift is incomplete in every instance

where a donor reserves the power to revest the beneficial title to the property in himself. * * *"

4. Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670; John Kelley Co. v. Commissioner, 326 U. S. 521, 527, 66 S.Ct. 299, 90 L.Ed. 278; Zanuck v. Commissioner of Internal Revenue, 9 Cir., 149 F.2d 714, 719; Gaylord v. Commissioner of Internal Revenue, 9 Cir., 153 F.2d 408, 415.

S. Goldman executed as trustee a Declaration of Trust."

The character of the document can best be determined by examination of its contents. It is too long to set out in full, but a condensed summary will suffice. Goldman therein acknowledged that he had in his possession and standing in his name as trustee for Lois Senderman 2,394-⅞ shares of Aztec stock [5] and two other shares in the name of other individuals; that he held the stock as trustee and the "beneficial owners of said stock are Lois J. Senderman, owner of 1596-⅞ shares and Lois E. Senderman, a minor, daughter of Lois J. Senderman, owner of 800 shares"; and that as trustee he agreed to hold the Aztec stock and any other property, real or personal, which Lois E. Senderman might thereafter deposit with him, on the terms and conditions therein specified.

Briefly, the conditions were that Goldman was to collect the income, invest and reinvest the "corpus" and income, pay expenses in connection with the management of "said trust property", including a reasonable sum for his services "as Trustee" and in the uncontrolled discretion of the "Trustee" to distribute to the "beneficiary" the whole or portions of the income and if that was not sufficient, "any portion of the corpus."

The "Trustee" further agreed to deliver the whole of the "trust estate" to any duly appointed guardian of the minor, or, if no guardian was appointed, to the minor upon her reaching the age of 21 years; or, in the event of the death of the minor prior to her reaching the age of 21, to her personal representative.

There were other provisions in the document to the effect that the "Trustee" might resign and discharge himself of "the trust created hereunder" by causing the property to be transferred to a guardian of the minor, and that in the event of the death of the "Trustee" while the trust still remained in force and effect, his executors or administrators were directed to deliver the trust property to the minor's guardian; or, if she had no guardian, to apply to a court of competent jurisdiction for the appointment of a guardian to whom the property could be conveyed.

The document did not mention a "gift" or use the word "irrevocable" and it contained no statement to the effect that the trust was irrevocable. It was signed by Goldman. Petitioner, in an appended endorsement, acknowledged receipt of a copy of the instrument and accepted it, and agreed "to be bound thereby."

■ Manifestly the instrument was not merely an acknowledgment of a completed gift, but was what it purported to be—a declaration of trust. It set out with reasonable certainty all of the elements deemed essential by California law for the creation of a valid voluntary trust, namely, an intention on the part of the settlor to create a trust, the subject matter of the trust, the purpose of the trust, a beneficiary, and acceptance of the trust by the trustee.[6]

■■ "Expressly" means, distinctly, clearly, unmistakably, or in direct terms, as distinguished from impliedly or inferentially.[7] By that definition, the

---

5. The record indicates that Goldman had held the Aztec stock in trust for petitioner for many years prior to January 1943. She testified before the Tax Court that she had inherited the stock from her father and mother, who died in 1935, and that "I will say that the stock never came into my name, that all stock I received went directly into Mr. Goldman's hands. I didn't receive it myself."

6. Dingwell v. Seymour, 91 Cal.App. 483, 267 P. 327; Randall v. Bank of America, 48 Cal.App.2d 249, 119 P.2d 754, 757; Miranda v. Miranda, 81 Cal.App.2d 61, 183 P.2d 61, 65.

7. See Webster's New International Dictionary, 2d Ed., Unabridged; 15A Words and Phrases, Express, p. 520; Solomon v. Neisner Bros., D.C., 93 F.Supp. 310, 316.

trust in the present case was not "expressly" made irrevocable by the instrument which created it. Under the California statute, therefore, the trust was subject to revocation by the Petitioner as the trustor or settlor, at any time before its termination. The fact that by its terms it would terminate on the happening of any one of a number of contingencies (such as the death or resignation of the trustee, or the death of the minor, or the appointment of a guardian for the minor) was not sufficient to make the trust "expressly" irrevocable. The right of revocation by Petitioner continued to exist until the trust terminated and, so long as the right existed, the gift was incomplete. We think the Tax Court correctly concluded that the gift was not completed and subject to taxation until the year 1946.

▪ Petitioner maintains that the order of the California state court of July 10, 1947, holding that the oral trust was irrevocable and the gift completed in 1943, was binding upon the Tax Court and other Federal Courts. We do not agree. The state court proceeding, brought more than a year after the trust had terminated by the death of the trustee and appointment of a guardian for the minor, did not involve a real and bona fide controversy between adverse parties. The guardian, Clarissa Shortall, who formerly had acted as attorney for the Petitioner, sought to have the trust declared irrevocable. There can be no doubt that Petitioner desired the same result. She testified in the state court hearing that she had declared an oral irrevocable trust in 1943. Apparently no one opposed the entry of the order. The record justifies the conclusion that the order was in the nature of a consent decree, and was collusive in the limited and special sense that all parties joined

in the submission of the issues and sought a decision which would adversely affect the tax rights of the government. Such an order did not foreclose the federal courts from determining the gift tax liability of Petitioner.[8]

▪ Finally, Petitioner contends that the transfer of the trust property to the guardian in May, 1946, did not constitute a taxable gift for the reason that it was made pursuant to a court order. Harris v. Commissioner, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111, is cited as supporting authority. The case is factually distinguishable from the case at bar. There it was held that a property settlement agreement between husband and wife, embodied in a divorce decree, was not subject to a federal gift tax, but by the terms of the settlement agreement it was operative only on the entry of a divorce decree. The transfer was thus made subject to the adjudication of a court which, under state law, had the power and the duty to effect a just and equitable distribution of both the community and separate property of the parties. In the instant case, as the Tax Court pointed out in its opinion, the transfer was wholly by private arrangement of the parties, and the trust instrument itself expressly provided for the termination of the trust and the transfer of the property to the minor's guardian upon the death of the trustee. When the customary application was made for authorization to transfer the property and for appointment of a guardian to receive and hold the same, the state court's function was limited to seeing that the transfer was authorized by the trust instrument and that a suitable person was appointed guardian. It was called upon to exercise discretion only as to the latter.

The judgment of the Tax Court is affirmed.

8. Doll v. Commissioner of Internal Revenue, 2 T.C. 276, 284, affirmed, 8 Cir., 149 F.2d 239, certiorari denied, 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430; Saulsbury v.

United States, 5 Cir., 199 F.2d 578, 580; Cf. Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634.