OPINION. Raum, Judge: 1. De-ficiencies for 19J¡3; Statute of Limitations. Petitioners urge that the assessment of the deficiencies determined for the year 1943 is barred by limitations because the statutory notices were mailed more than 3 years after the expiration of the 3-year period provided in section 275 (a) of the Internal Revenue Code of 1939.[3] While conceding that the notices were mailed within the 5-year period provided in section 275 (c), as extended by waivers, they urge that that section has no application because (a) there was no “omission” from gross income, and (b), in the alternative, if there was an “omission” from gross income, it did not amount to 25 per cent of the gross income stated in their returns. The burden of proving that the 5-year period provided in section 275 (c) is applicable is on the respondent. The deficiencies which he determined for the year 1943 result principally from his addition to the net income disclosed in the return for that year filed by each petitioner of the amount of $17,946.97. In his answers to the petitions, the respondent alleges that Jact Rose in his 1943 return reported gross income of $48,153.04 and Mae Rose in her return for that year gross income of $43,314.23; that each of petitioners failed to include $17,946.97 in gross income;[4] and that each petitioner, therefore, omitted from gross income an amount properly includible therein which was in excess of 25 per centum of the gross income reported in their returns. The alleged omissions of $17,946.97 each, or a total of $35,893.94, were attributable to the failure to deduct from cost of merchandise, bought for sale by the Ventura and Santa Barbara stores, certain earned discounts amounting to $26,040.44, and to the practice of marking down opening and closing inventories of the two stores by one-third of cost which in 1943 resulted in an understatement of income in the amount of $9,853.50. The petitioners do not contest the correctness of the Commissioner’s action in including in their income the earned discounts which were not reported. They do urge, however, that the $9,853.50 markdown in inventories of the stores should not be included in their income for 1943, on the ground that this practice had been consistently followed. The books kept for each of the stores showed inventories only at cost. Yet, for purposes of income tax returns, the inventories were reduced by one-third to reflect a decline in market value. Petitioners do not undertake to defend this practice on the merits, and indeed concede it was improper for the years following 1943. We think it was equally improper for 1943 and cannot be sustained on the grounds of consistency. The petitioners’ principal contention is that section 275 (c) is inapplicable because the failure to reflect cash discounts in the returns and the adjustment of inventories in the circumstances of this case merely resulted in an overstatement of the cost of goods sold, and an overstatement of cost of goods sold is not an “omission” from gross income within the meaning of that section, citing Uptegrove Lumber Co. v. Commissioner, 204 F. 2d 570 (C. A. 3).[5] Our decision in J. W. Gibbs, Sr., 21 T. C. 443, is to the contrary. However, we do not find it necessary to pass upon this point because, for reasons that we shall set forth, the $17,946.97 understatement of gross income of each petitioner in the circumstances of this case was not in any event in excess of 25 per centum of the gross income stated in their returns. The petitioners are residents of California, a community property State. During 1943, all of the property of petitioners, including their interests in the two stores, was community property. During 1943, the Santa Barbara store was operated by a partnership composed of Jack Rose and Louis Rose in which each owned a 50 per cent interest, and a partnership return was properly filed reporting gross and net income. Inasmuch as Jack and Mae Rose each had a community interest in his share of the net income from this store, each reported in his or her individual return one-fourth of the net income shown in the partnership return. Respondent in his brief states that “a valid partnership return may be read with the individual return to arrive at the total gross income stated in the return. See I. T. 3981, 1949-2 C. B. 78” and that he does not rely upon L. Glenn Switzer, 20 T. C. 759, in which this Court expressed a different view, and which was remanded by the Court of Appeals for the Ninth Circuit on September 17,1954, with directions (in accordance with stipulation of parties) to vacate our decisions and enter decisions for the petitioners. Cf. Harry Landau, 21 T. C. 414, 421, in which this Court said: “The general rule is that an individual partner is deemed to own a share interest in the gross income of the partnership.” The Ventura store was not operated by a partnership. It was community property of the petitioners and the income therefrom was community income. Each of the petitioners, therefore, should have reported one-half of the gross income from the business. Leslie A. Sutor, 17 T. C. 64, 67. The respondent urges that they did not do so in their individual returns, and that their failure to do so is an omission from gross income by each of them. But we think it is unrealistic to say that the petitioners did not report the gross income of the Ventura store (with the exception of the $17,946.97 which each of them omitted). They did so on Form 1065, a “partnership return.” Although there was no partnership between them in the business of this store, Form 1065 returns were filed for the years 1938 to 1948, inclusive, at the suggestion of a revenue agent to facilitate the reporting of the community income of the store. The so-called partnership return filed for 1943 reported the gross income of the Ventura store in which petitioners each had an equal interest. It was not the return of another taxable entity. Cf. Corrigan v. Commissioner, 155 F. 2d 164, 166 (C. A. 6); Elvina Ratto, 20 T. C. 785, 789. It showed income of the community, a nontaxable entity. In the circumstances we think that the so-called partnership return filed for the Ventura store was merely an adjunct to the individual returns of Jack and Mae Rose and must be considered together with such individual returns and treated as part of them. This case is thus distinguishable from the Switzer case where the return in question was a proper partnership return, whereas here it was nothing unless it was an adjunct to the individual returns. But if the Commissioner is now and henceforth to concede, contrary to our decision in the Switzer case, that a valid partnership return may be read with the return of an individual partner to arrive at the total gross income stated in the partner’s return, then, a fortiori, the Form 1065 return in this case which was filed merely to facilitate the reporting of community income of the petitioners, similar returns having been accepted for a number of years for that purpose by the Commissioner, would have to be read together with the individual returns of the partners to ascertain how much gross income was reported by each of them. Cf. Germantown Trust Co. v. Commissioner, 309 U. S. 304; Atlas Oil & Refining Corporation, 22 T. C. 552, 557. We hold, therefore, that one-half of the gross income appearing on the Ventura store “partnership” return must be imputed to the individual return filed by each petitioner in determining the total gross income stated therein for the purposes of section 275 (c). The following computation submitted by petitioners which we find to be correct, demonstrates that when the Ventura “partnership” return is considered together with the individual return of each petitioner for 1943 (even without giving any effect to the gross income reported in the Santa Barbara partnership return) the omission of $17,946.97 by each petitioner was not in excess of 25 per cent of the gross income stated in his or her return. Jack Rose Gross income shown on individual return_ $48,153. 04 Less share of net income of Ventura store reported in individual return_ 22, 954. 84 Balance_ $25,198.20 Plus % the gross income shown on Ventura store “partnership” return_ 52, 009. 20 Total gross income for sec. 275 (c) purposes_ $77,207. 40 25% of $77,207.40 is_ $19, 301. 85 Alleged “omissions” per notice of deficiency— Earned discounts_$13¡ 020. 22 Inventory adjustments_ 4, 926. 75 $17,946. 97 Mae Rose Gross income shown on individual return_ $43, 314. 23 Less share of net income of Ventura store reported in individual return_ 22,954. 84 Balance_ $20, 359. 39 Plus Y¡ the gross income shown on Ventura store “partnership” return_ $52, 009. 20 Total gross income for sec. 275 (c) purposes_ $72,368.59 25% of $72,368.59 is_ $18, 092.15 Alleged “omissions” per notice of deficiency— Earned discounts_$13, 020. 22 Inventory adjustments_ 4, 926. 75 $17, 946. 97 Accordingly, we have made a finding, and bold, that the assessment and collection of deficiencies in income and Victory tax of Jack Rose and Mae Nose for 1943, determined by respondent, are barred by section 275 of the Internal Revenue Code of 1939. Since the deficiencies for 1943 are barred the addition to tax for negligence for that year must likewise be disapproved. 2. Trust Issue. The Commissioner determined that the two trusts created for the benefit of each of petitioners’ children, Ronald and Lawrence, were not partners in the business of the Jack Rose Shops at Ventura and Santa Barbara, and that the income from those enterprises ascribed to the trusts for the years 1944 to 1948, inclusive, must be charged to petitioners. On January 2, 1944, petitioners had two minor sons, Ronald and Lawrence. On that date Jack Rose executed an instrument purporting to establish a trust for the benefit of Ronald, and Mae executed a similar instrument for the benefit of Lawrence. Jack Rose was named trustee in both instruments. The trusts were described as irrevocable and were to terminate in approximately 27 years. All income was to be added to principal but the trustee in his sole discretion could pay out any sum for the beneficiary’s use “to take care of any and all circumstances”; and upon any division or distribution of the property the trustee was given absolute and binding discretion in determining what constitutes a proper division. The corpus of each trust was stated to consist of “Accounts Receivable,” “C. O. D.’s,” “Merchandise Inventory,” and “Fixtures,” in specified dollar amounts in each of the two Jack Rose Shops. No specific assets were transferred to the trusts; the foregoing represented merely undivided interests in each of the four categories of assets described. Nor were any interests in real estate or other assets of the businesses transferred to the trusts. Gift tax returns were filed with respect to each of these trusts and the reported value of each gift was redetermined to be $50,304.15. A capital account was set up for each trust on the books of each of the Jack Rose Shops. At the end of each year, 24 per cent of the net income of the Ventura store and 12 per cent of the net income of the Santa Barbara store were credited to the capital account of each trust. Income tax returns were filed on the theory that each of the trusts was a partner in each of the two stores. However, there were no written partnership agreements in which either of the trusts appeared as a partner. No representations were made to financial institutions or in the business world that the trusts were partners, nor was any such partnership disclosed on insurance policies or social security, unemployment insurance, or sales tax returns. No income was in fact paid over to the trusts, nor were any amounts paid out for the benefit of the trusts other than for the purpose of paying taxes on income that was being ascribed to the trusts. It is altogether too plain that the alleged partnerships were a sham, and petitioners have abandoned their position that these were bona fide partnerships. Petitioners contend, however, that even if the trusts were not partners, each trust was entitled to a “reasonable rate of return” based upon the value of the corpus, and to the extent of such reasonable rate of return income of the enterprises otherwise chargeable to petitioners must be attributed instead to the trusts. Petitioners’ theory is not entirely clear, and the statutory basis for such result is not articulated. Petitioners argue that the trusts were entitled to a 15 per cent rate of return, and they rely heavily upon certain proceedings initiated in the California courts after the present cases had been docketed in this Court. Those proceedings were plainly nonadversary in character, and it is highly dubious whether they should have any controlling effect in the present litigation. Cf. Estate of Ralph Rainger v. Commissioner, 183 F. 2d 587 (C. A. 9), affirming 12 T. C. 483; Saulsbury v. United States, 199 F. 2d 578, 580 (C. A. 5); Lois J. Newman, 19 T. C. 708, affirmed, 222 F. 2d 131 (C. A. 9); Estate of Arthur Sweet, 24 T. C. 488. As already noted, petitioners have not pointed to specific statutory provisions upon which they rely. In speaking of a “reasonable rate of return,” they may perhaps be referring to interest payable to creditors. If so, they must be relying upon section 23 (b) of the Internal Revenue Code of 1939 which allows a deduction for interest. However, petitioners in fact paid no interest to the trusts during the years in question,[6] and since there is no contention that they are on any basis other than the cash basis, they certainly cannot obtain the benefit of interest deductions for the years before us. Wofford v. Commissioner, 207 F. 2d 749 (C. A. 5), upon which petitioners rely, is distinguishable. There the trust was treated as having a one-third interest in the entire business in question, and, whatever may be thought of the correctness of that decision, the situation there presented was different from the one before us. There the trust was regarded as entitled to a fraction of the profits of the enteprise; here, petitioners argue that a specified rate of return (15 per cent) must be allowed to the trusts regardless of the earnings of the two Jack Rose Shops. Petitioners’ position here is plainly an afterthought. There was an attempt to treat the trusts as partners during the years 1944-1948. However, the partnership theory was spurious, and petitioners abandoned it. Thereafter, for the years 1949, 1950, and 1951, no income was allocated to the trusts and no income tax returns were filed for them. Regardless of whether the subsequent nonadversary proceedings in the California courts may be taken as an authoritative disposition of the question whether valid trusts were created, they certainly cannot control the Federal tax consequences which flow from such ruling. If petitioners’ reasonable-rate-of-return theory is one turning upon the interest deduction, it is not available here for reasons already set forth above. On the other hand, if it is one which depends upon statutory provisions (not identified) akin to the partnership provisions, then petitioners must also fail for the same reason that the partnership theory would be ineffective to relieve petitioners of tax upon the income. “The crucial question,” as the Supreme Court said in Commissioner v. Sunnen, 333 U. S. 591, 598, “remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes.” The management and control of the business of both the stores was in Jack Nose prior to the purported gifts, and remained in him thereafter. Under the terms of the trust instruments he was given broad powers of control and management of the trust assets. He could hold them, as trustee, in his own name, or in the name of his nominee. He could sell, convey, or exchange them, or manage or control them, on such.terms and in such manner as he deemed desirable. His decision as to a proper division of the trust property, partial or final, was binding on the beneficiary. In his discretion he could pay to or for the beneficiary any sum necessary to take care of “any and all circumstances.” These powers enabled him to use the assets of the trust in the business of the two stores as they would have been used if the trusts had not been created. The trust indentures, therefore, effected no real change in the operation of the stores. Neither did they change the relationship and control which the petitioners had over their family property. The business, assets, and income of both stores continued to be controlled and dominated by Jack Nose. He could and did keep the assets and any proceeds of their sale or other disposition in the businesses. No bank account was opened for the trusts and no part of the income of the two stores was ever actually distributed to them. As we view the evidence, we have here another instance where a husband and wife assigned interests in their respective shares of community property to their children while retaining effective control over both property and income. Jack Kose controlled both his and his wife’s interest in that property and income prior to the assignments, and continued to do so thereafter. We find it difficult to perceive how the economic position of either was materially changed by the creation of the trusts. Petitioners have not shown that the Commissioner’s determination in respect of the trust issue was in error. Cf. Losh v. Commissioner, 145 F. 2d 456 (C. A. 10); Christopher v. Campbell, 223 F. 2d 124 (C. A. 5); Eisenberg v. Commissioner, 161 F. 2d 506 (C. A. 3). 3. Depreciation of Ventura Store Building. This issue involves depreciation claimed by petitioners in their joint return for 1949 on the new Ventura store building which was completed in the latter part of 1948. The petitioners contend that the useful life of this building is 40 years and that depreciation should be allowed on this basis. The respondent determined that its useful life was 50 years and that a reasonable allowance for depreciation was 2 per cent for 1949. The burden was on the petitioners to prove that the respondent’s determination was erroneous. The building was constructed of reinforced concrete and steel, and had a basement and three floors. It had a glass front extending to a high ceiling, and was architecturally planned for the ladies’ ready-to-wear business. Evidence was introduced by petitioners to the effect that the front of the building should be changed within 10 to 25 years in order to attract business and that frequent changes should also be made in the interior of the building. Jack Rose and' another witness engaged in the ladies’ ready-to-wear business testified that the building had a useful life of from 30 to 35 years. We have carefully considered this and other evidence submitted by petitioners and are satisfied that the useful life of the building is 40 years. 4. Charitable Contributions. This issue relates to the amount of deductions for charitable contributions for the years 1947, 1948, and 1949 to which the petitioners are entitled in addition to those stipulated by the parties to be allowable as deductions for those years. We have made a finding that contributions made by petitioners in addition to those stipulated to be allowable totaled $291.14 in 1947 and $262.62 in 1948, one-half of which is allocable to and deductible by each petitioner. The deduction of other amounts, claimed as contributions in petitioners’ returns for the years 1947,1948, and 1949 and not included in the stipulation as allowable, is denied for lack of substantiation. 5. Ranch Depreciation. Petitioners, by amendments to their petitions, make claim for allowance of depreciation on various improvements made on their 12-acre ranch in Carpintería, California, for the taxable years 1946 through 1949. Mae Rose testified that this ranch was their personal home. In returns filed for the taxable years the petitioners did not report the receipt of any income from the operation of the ranch. There is no evidence that the ranch was operated as a business, and we do not agree with petitioners’ statement on brief that the very size of the ranch, 12 acres, indicates that it was operated as a business rather than as a hobby. In the circumstances, the petitioners’ claim for allowance of depreciation must be denied. Cf. Bradley v. Commissioner, 184 F. 2d 860, 863 (C. A. 7). Decisions will be entered under Rule 50. SEC. 275. PERIOD OP LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276— (a) Gbnekal Rule. — The amount of income taxes imposed by this chapter shall be assessed! within three years after the return was filed, and no proceeding in court without assessment for the coUection of such taxes shall be begun after the expiration of such period. ******* (c) Omission Pbom Gross Income. — If the taxpayer omits from gross income an amount properly Includible therein which is in excess of 25 per centum, of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. On brief respondent contends for the first time that Mae Rose omitted an additional amount representing her community interest in farm income of $7,436.94 reported in the return of Jack Rose. This contention comes too late. Cf. Staff v. Commissioner, 220 F. 2d 65 (C. A. 9), and Deakman-Wells Co. v. Commissioner, 213 F. 2d 894 (C. A. 3). The payment of income taxes of the trusts on the theory that they were partners can hardly qualify as payments of interest on an indebtedness.