Nathan GOLDSMITH and Isidor Gold-
smith, Plaintiffs,

v.

Thomas E. SCANLON, District Director
of the Internal Revenue Service,

Willis C. Lawrence, Chief, Collection Di-
vision of the Internal Revenue
Service, and

Jesse Aber, a Collection Officer of the In-
ternal Revenue Service, each acting as
such for the Brooklyn District of New
York, sued herein individually and as
public officers, Defendants.

Civ. A. No. 18208.

United States District Court
E. D. New York.

Jan. 2, 1958.

Harold Davis, New York City, for
plaintiffs.

Cornelius W. Wickersham, Jr., U. S.
Atty. for the Eastern Dist. of New York,
Brooklyn, N. Y., for defendants, L. Don-
ald Jaffin, Asst. U. S. Atty., Brooklyn,
N. Y., and Paul L. Meaders, Sp. Atty.,
I. R. S., New York City, of counsel.

BYERS, District Judge.

These are cross-motions for (1) a tem-
porary injunction sought by plaintiffs,
and (2) for dismissal of the suit by de-
fendants for lack of jurisdiction, and
failure to state a claim, etc.

There is no material issue of fact to be
tried, since the sole controversy concerns
the validity of an assessment made on
December 23, 1954 against each plaintiff.
If it was valid, the defendants' motion
should be granted; if not, it should be
denied.

One opinion will suffice for both mo-
tions.

It appears without dispute that taxes
for the year 1947 alone are involved;
and that each taxpayer filed a return in
due season (March 15, 1948) in which
his 1947 taxable income was correctly
stated, i. e. $43,135.22 as to Nathan;
$43,146 as to Isidor.

However in his computation of the
balance payable, each claimed a payment
on account during the preceding twelve
months of $35,000, leaving a balance pay-
able on March 15, 1948 of $8,135.22 as
to Nathan, and $8,146.00 as to Isidor.

It is also undisputed that the item of
$35,000 so claimed to have been paid on

account was false and untrue, in that: as to Nathan the actual payments on account had been in the sum of $12,031.74, a difference of $22,968.26; and as to Isidor, the actual payments on account had been $11,575.02, a difference of $23,424.98.

Amended returns filed in 1949 did not refer to the foregoing, and have no present bearing.

It is also undisputed that on December 23, 1954 a new assessment was made against Nathan for the said sum of $22,968.26 and against Isidor for $23,424.59 (probably $23,424.*98* would have been the correct amount) and it is the validity of that action which is the question now requiring decision.

Obviously the deficiencies in payment resulted from the respective taxpayers' incorrect assertions as to the balance actually payable on March 15, 1948 and the Government has sustained a loss because of that affirmative misrepresentation. It is equally obvious that the balance is owing and should be paid, unless there is an infirmity in the law itself which can be. successfully asserted to defeat that just result.

The argument for the taxpayers is that the assessment of December 23, 1954 was void as having been made more than three years after the return was filed (Int.Rev.Code 1939, § 275(a), 26 U.S.C.A. § 275(a)).

That since the period of limitation is six years (id. 276(c), 26 U.S.C.A. § 276 (c)), the action of the defendants about to be stated, is without warrant in law, and should be enjoined.

That action is the issuance on November 15, 1957 of a summons by the District Director and others named, directed to each taxpayer as part of the purpose to collect 1947 income tax (i. e., the amounts above referred to).

The summons calls for appearance before a collection officer on November 29, 1957 and the production of (1) copies of 1956, 1955 and 1954 Federal Income Tax Returns, (2) proof of payments "of above cancelled checks or money orders,"

and (3) complete financial statement, "Form 433 AD attached."

These requirements are not understood by the court, and have not been discussed in the defendants' brief. The present decision is confined solely to the question of the power of the District Director to undertake collection of the unpaid portion of the 1947 tax of Nathan and Isidor Goldsmith, without regard to possible objections to the said requirements to produce.

There is no question of default in responding to the summons, in view of filing of the complaint in this action on November 22, 1957.

The plaintiffs' attack upon the assessment in 1954 is that the original assessment based upon the returns filed March 15, 1948 not having been questioned or reopened within the period of three years, namely by March 15, 1951, it became immune from any Departmental action which would have the effect of substituting an assessment based upon the truth as to the amounts which had actually been paid on account of the 1947 tax, as contrasted with the untrue statement by each taxpayer that $35,000 had been so paid.

For completeness, it should be added that second amended returns were filed by each taxpayer in June of 1950, namely: by Nathan, showing that the actual payments made by him on account of 1947 taxes were $22,592.72 (not $35,000), and by Isidor showing $22,147.26 (not $35,000).

The differences between these separate sums and the $35,000 payments originally claimed, are $12,407.28 and $12,852.74 respectively. (See Morrissey affidavit, pages 2 and 3.)

No explanation for the discrepancies thus revealed seems to have been offered, nor does it appear that even the amounts payable under the taxpayers' revised figures were paid or tendered with the second amended returns.

Since these latter were filed within three years after March 15, 1948, resort to the use of waivers was had, and all three were signed as to each taxpayer,

whereby it was agreed "That the amount of any income tax * * * due under any return (or returns) made by or on behalf of the above named taxpayer * * * for the taxable year ended December 31, 1947 * * * may be assessed at any time on or before June 30, 1955 * * *."

The last of such waivers as to each taxpayer is dated in 1953, the first and second being in 1951 and 1952.

The taxpayers assert that these waivers did not extend the time for collection, but were intended "solely to allow the Commissioner to impose *additional* taxes for 1947 if such additional taxes were found to be due." Thus the plaintiffs' brief page 7. This seems to mean that the tax liability as asserted in the returns was never changed, although the balance payable was therein falsely stated. The difficulty with that reasoning is that the tax liability is the thing that gave rise to the "balance of tax due" as computed, after giving credit to the payments claimed on account; both items were required to be correct in order that the true balance of tax due should appear. It is not apparent that the final result is any less important than either of its component elements. Thus when the waivers refer to "the amount of any income tax due under any return" they cover that which is embraced in that part of each return which follows the words "balance of tax due."

Section 276(a) of the 1939 Code reads: "False return or no return. In the case of a false or fraudulent return with intent to evade tax * * * the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

That these returns were false as to the asserted payment on account of $35,000 in each case, admits of no argument, for certainly they were not true, nor is it argued that they were.

Whether the statutory requirement could be met of showing "intent to evade tax" is not in issue here, nor can it be the subject of comment. The reference is included solely to indicate that in part at least, a situation is present in which it could be argued that the law itself has removed any bar by limitation.

The plaintiffs' argument which seeks to avoid the effect of the waivers comes down to this: All that was consented to was an assessment (without regard to the necessity therefor), and that of 1954 was not truly such since no element of deficiency was involved, but the mere correction of the amount due.

This is thought to be specious in that it ascribes to the words "may be assessed" appearing in the waivers an unnecessary restriction upon the capacity of the Director which would confine his authority to action which the circumstances did not invoke, namely the assessment of a deficiency.

He was dealing with returns that did not involve debatable items of deductions, or the difference between capital gains and otherwise, as in the cited cases of Uptegrove Lumber Co. v. Commissioner, 3 Cir., 204 F.2d 570; Slaff v. Commissioner, 9 Cir., 220 F.2d 65; Goodenow v. Commissioner, 8 Cir., 238 F.2d 20. (Incidentally, none of these cases discusses the effect of waivers, if there were such.)

His duty was to meet a practical situation not arising from any act or omission on his own part, but because of a misrepresentation contained in these returns. No similar case has been cited by either counsel; plainly the instant circumstances called for remedial action of some kind, and calling the process "assessment" even though it was not precisely that within established practice, is not seen to have involved an unwarranted application of either the statute or the regulations.

It is pointed out for the defendants that the assessment originally made, was the only possible one, based upon the incorrect figures as to payments made on account asserted by the taxpayers, and all that has been done is to put them in the position they would have occupied if they had originally made a correct disclosure as to the balance of tax payable.

**310**

Since they alone were responsible for the original "assessment", nothing has been made to appear, having in mind the provisions of the waivers, why it is to be deemed too late by reason of limitation, for the Government to collect the true balance of tax payable.

The cases cited by the plaintiffs for an injunction despite the provisions of Section 3653(a) of the 1939 Code, 26 U.S. C.A. § 3653(a), are in no instance seen to involve any such showing as these plaintiffs present.

There is no indication within, for instance, National Foundry Co. v. Director of Internal Revenue, 2 Cir., 229 F.2d 149, 151, that the subject matter constitute taxes "clearly illegal or other special circumstances," nor an attempt to collect "a nonexistent tax claim," which would justify this court in granting the relief sought in the plaintiffs' motion.

It follows therefore that the defendants' motion for dismissal should be granted, and plaintiffs' motion for an injunction should be denied.

Settle order.