GERMAN SOCIETY OF MARYLAND, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3512–80.    Filed April 21, 1983.

*George O. Sparks, Jr.*, and *Felix Berger*, for the petitioner.
*J. Calton Howard, Jr.*, for the respondent.

WILBUR, *Judge*: Respondent determined that petitioner was liable for private foundation excise taxes under section 4945(a)(1)[1] in the amount of $920 in 1974, $650 in 1975, and $417 in 1976. The issue for our decision is whether a party that has "corrected" its improper expenditure, as specified by the Code and regulations, is relieved of liability for the initial tax of section 4945(a)(1).

FINDINGS OF FACT

The facts in this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.

Petitioner, the German Society of Maryland, Inc., is a private foundation dedicated to providing scholarship grants to students of Swiss and German ancestry who require financial assistance in furthering their education at 4-year colleges within the State of Maryland. The foundation was first recognized as exempt from Federal income tax in 1946; its section 501(c)(3) status was reaffirmed in 1971. Petitioner was

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue, unless otherwise noted.

classified as a section 509(a) private foundation in November 1972.

During the years 1974, 1975, and 1976, petitioner made scholarship grants of $9,200, $6,500, and $4,170,[2] respectively. Forms 990PF, Return of Private Foundation Exempt from Income Tax, were timely filed for each of those years; the grants were properly noted on the returns. Through petitioner's inadvertence, the grant-making procedures were not submitted to the respondent for approval until November 15, 1976. Approval was received on April 24, 1978, and was made retroactive to November 15, 1976, the date of petitioner's formal application.

By notice of deficiency mailed January 10, 1980, respondent determined that petitioner was liable for the initial excise tax of section 4945(a)(1) for those scholarship grants made prior to November 15, 1976.

## OPINION

Petitioner is a tax-exempt, private foundation dedicated to helping students of Swiss and German ancestry finance their college educations. Although the foundation has been in existence for many years, it first submitted its grant-making procedures to the respondent for the approval required by section 4945(g) in November 1976. Approval, once granted, was made retroactive to the date of application, but did not extend to grants made before that time. Respondent determined that the grants made prior to November 1976 were taxable expenditures within the meaning of section 4945(d)(3), and that petitioner was therefore liable for the initial tax imposed by section 4945(a)(1). Petitioner argues that, first, it "corrected" its failure to receive advance approval within the meaning of section 4945(i)(1) and section 53.4945–1(d)(3), Private Foundation Tax Regs. Second, petitioner claims that this correction is completely retroactive, and thereby relieves it of all liability for the section 4945 excise tax. Respondent, to the contrary, contends that whether or not petitioner corrected its failure is irrelevant, since correction would only relieve petitioner of

---

[2]This figure represents grants made prior to Nov. 15, 1976, the date upon which the Commissioner's approval of the grant-making procedures was deemed effective for purposes of sec. 4945.

liability for the additional tax of section 4945(b) and not for that of section 4945(a)(1). We agree with respondent.

Section 4945 was enacted as part of the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, 512, which tightened many rules concerning the taxation of private foundations. Section 4945 was aimed, among other things, at curbing abuse of the provisions allowing foundations to make "educational" grants for travel, study, etc.[3] The new rules, which require that granting procedures receive formal approval, were designed to ensure that "expertise and fairness replace whim and personal relationships" in the awarding of scholarships. H. Rept. 91–413 (1969), 1969–3 C.B. 200, 223.

The means chosen for terminating the abuse was an excise tax on all "taxable expenditures," a category which includes "grant[s] to an individual for travel, study, or other similar purposes by such individual, unless such grant satisfies the requirements of subsection (g)." Sec. 4945(d)(3). Subsection (g), in turn, provides that a grant shall not be a taxable expenditure if it is awarded on an objective and nondiscriminatory basis under a procedure "approved in advance" by the Secretary of the Treasury or his delegate.

Section 4945 imposes two different excises: first, the "initial tax" of section 4945(a)(1), which is 10 percent of the taxable expenditure; second, the section 4945(b)(1) "additional tax" of 100 percent of the expenditure.[4] The additional tax may be

---

[3]The committee report states that:

"existing law does not effectively limit the extent to which foundations can use their money for 'educational' grants to enable people to take vacations abroad, to have paid interludes between jobs, and to subsidize the preparation of materials furthering specific political viewpoints.

"Your committee has concluded that more effective limitations must be placed on the extent to which tax-deductible and tax-exempt funds can be dispensed by private persons * * *"

H. Rept. 91–413 (1969), 1969–3 C.B. 200, 221–222.

[4]The pertinent provisions of sec. 4945(a) and (b) are as follows:

SEC. 4945. TAXES ON TAXABLE EXPENDITURES.

(a) INITIAL TAXES.—

(1) ON THE FOUNDATION.—There is hereby imposed on each taxable expenditure (as defined in subsection (d)) a tax equal to 10 percent of the amount thereof. The tax imposed by this paragraph shall be paid by the private foundation.

*     *     *     *     *     *     *

(b) ADDITIONAL TAXES.—

(1) ON THE FOUNDATION.—In any case in which an initial tax is imposed by subsection

avoided by "correcting" the expenditure within the "correction period"[5]; correction is defined in section 4945(i) and in section 53.4945-1(d), Private Foundation Tax Regs.[6] The controversy in this case revolves around whether appropriate "correction" relieves the foundation of liability for both the initial and additional taxes, or just the additional ones.

The statutory language, legislative history, and case law convince us that the correction by the petitioner will not relieve it of liability for the initial excise tax. Section 4945(a)(1) states simply that a tax is "hereby imposed" on the taxable expenditure; unlike section 4945(b)(1), it contains no language indicating that the liability is conditional. The clear implication is that the tax will be imposed regardless of subsequent actions by the foundation.

The legislative history supports this view. The House bill contained only the 100-percent excise on improper expenditures; the Senate added the first-tier tax, explaining that:

The committee amendments provide an initial sanction of 10 percent of the

---

(a)(1) on a taxable expenditure and such expenditure is not corrected within the correction period, there is hereby imposed a tax equal to 100 percent of the amount of the expenditure. The tax imposed by this paragraph shall be paid by the private foundation.

[5]After the decision of *Adams v. Commissioner*, 72 T.C. 81 (1979), affd. in an unpublished opinion 688 F.2d 815 (2d Cir. 1982) (see p. 745 *infra*), the term "taxable period" was substituted for "correction period." Pub. L. 96–596, sec. 2(a)(2), 94 Stat. 3469. The 1980 Act also added secs. 4961 and 4962 to the Code. Sec. 4961 provides that if a "taxable event" is corrected within the "correction period," as defined in sec. 4962(c) and (e), the second-tier tax imposed by sec. 4945(b) shall not be assessed. These provisions effectively mandate the result already contemplated by sec. 4945(b)(1).

[6]Sec. 53.4945–1(d)(3), Private Foundation Tax Regs., defines one means of correction:

Sec. 53.4945–1. Taxes on taxable expenditures.

(d) *Correction* — * * *

    *       *       *       *       *       *       *

(3) *Correction for failure to obtain advance approval.* Where an expenditure is taxable under section 4945(d)(3) only because of a failure to obtain advance approval of procedures with respect to grants as required by section 4945(g), correction may be accomplished by obtaining approval of the grant making procedures and establishing to the satisfaction of the Commissioner that:

(i) no grant funds have been diverted to any use not in furtherance of a purpose specified in the grant;

(ii) the grant making procedures instituted would have been approved if advance approval of such procedures had been properly requested; and

(iii) where advance approval of grant making procedures is subsequently required, such approval will be properly requested.

Because of our conclusion that correction will not relieve petitioner of liability under sec. 4945(a)(1), we express no opinion as to whether petitioner has in fact "corrected" within the meaning of the quoted regulation.

amount improperly spent * * * The heavier sanction would apply later only if the foundation refused to correct the earlier improper action to the extent possible. * * * [S. Rept. 91–552 (1969), 1969–3 C.B. 423, 457.]

While this language does not directly address the issue at hand, it supports our contention that the initial tax is a spur designed to remind the foundation that it has been remiss. Subsequent compliance with the rules enables the foundation to avoid the real whip of section 4945(b)(1), but cannot undo the punishment for its initial infraction.

Finally, the few cases that have been decided under section 4945 and other provisions enacted in 1969, treat this as a two-layer excise. In *Larchmont Foundation, Inc. v. Commissioner*, 72 T.C. 131 (1979), the Commissioner had imposed excise taxes under both subsections (a) and (b) of section 4945. This Court held, first, that because petitioner had offered no evidence to show that the expenditures were not taxable, the foundation was liable under section 4945(a). Second, following the reasoning of *Adams v. Commissioner*, 72 T.C. 81 (1979), affd. in an unpublished opinion 688 F.2d 815 (2d Cir. 1982), the Court held that no deficiencies existed under section 4945(b).[7] In *Adams*, a case involving an excise under section 4941,[8] the Court was asked to construe the term "correction period" in order to determine whether respondent's assertion of a deficiency under section 4941(b) was valid. A majority of the Court held the determination invalid because at the mailing of the statutory notice there was not yet a deficiency under section 4941(b)(1).[9] *Adams* and *Larchmont* are important here only

---

[7]The Court of Appeals for the Seventh Circuit vacated that portion of our decision in *Larchmont Foundation, Inc. v. Commissioner*, 72 T.C. 131 (1979), holding that the provisions of sec. 4945(b) were invalid and unenforceable in light of the 1980 amendment. Upon remand, this Court concluded that Larchmont and Mr. Stout were liable for the second-tier taxes imposed by sec. 4945(b). *Larchmont Foundation, Inc. v. Commissioner*, T.C. Memo. 1982–145.

[8]Sec. 4941 imposes an excise tax on self-dealing by private foundations. Its structure parallels that of sec. 4945: sec. 4941(a) imposes an "initial tax" of 5 percent, and sec. 4941(b) imposes an "additional tax" of 200 percent if the act of self-dealing is not corrected within a specific time.

[9]The statute as originally enacted presented this conundrum:

"On the date of the mailing of the notice of deficiency which determines the second-level tax, our decision with respect to that tax obviously has not yet become final. Since our decision is not final, under section 4941(e)(4) the correction period has not expired. Pursuant to section 4941(b)(1), the expiration of the correction period is a prerequisite to the imposition of the second-level tax. If the tax is not imposed until the correction period expires, it is clearly not imposed on the date of the mailing of the statutory notice and,

insofar as they demonstrate that the definitional problems relating to the term "correction period" did not affect imposition of the first-level tax of section 4945(a) or 4941(a). Were it possible to avoid liability for the initial tax by timely correction, the time limits of the "correction period" would be as important under section 4945(a) as under 4945(b), and the excise of section 4945(a) would not have been imposed.

Thus, it appears that petitioner is liable for the initial tax of section 4945(a)(1) on all grants awarded in 1974, 1975, and those made prior to November 15, 1976. Petitioner's arguments that its procedures were identical in all of the years at issue, that it did not engage in any improper activity, and that the penalty is therefore undeserved and unwarranted does not fall on deaf ears. We understand the problems faced by foundations run by volunteers with little expertise in Federal taxation, and we realize that they often lead to inadvertent errors such as that involved here. Nonetheless, Congress enacted a statutory scheme which imposes an excise tax on those foundations that fail to obtain the approval required by section 4945(g). We are not free to disregard that mandate.

*Decision will be entered for the respondent.*

---

therefore, there is no "deficiency" as that term is defined in section 6211(a). * * * [*Adams v. Commissioner*, 72 T.C. 81, 85–86 (1979).]"

This procedural defect was corrected in 1980 by Pub. L. 95–596.