**JOHN Q. SHUNK ASSOCIATION, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–2–80–623.**

United States District Court, S.D. Ohio, E.D.

Sept. 20, 1985.

Michael Becker, Glander, Brant, Ledman & Newman, Columbus, Ohio, for plaintiff.

Albert Ritcher, Asst. U.S. Atty., Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiff brings this action seeking recovery of federal income taxes which it alleges defendant illegally assessed and collected from it for the taxable years 1974, 1975 and 1976. Jurisdiction is invoked under 28

U.S.C. § 1346 and 26 U.S.C. § 7422. This matter is before the Court for resolution on the stipulated facts and briefs of the parties.

The facts are stipulated as follows. Plaintiff, the John Q. Shunk Association, Inc., is a not-for-profit corporation incorporated under the laws of Ohio on February 9, 1960. On August 3, 1960 the Internal Revenue Service determined that plaintiff qualified as a tax exempt organization under section 501(c)(3) of the Internal Revenue Code. 26 U.S.C. § 501(c)(3).[1] Plaintiff's exemption from federal income tax has been continuously in effect since August, 1960 and was in effect during the tax years at issue here.

Plaintiff Association, during the years 1974, 1975 and 1976 met the definition of a private foundation as defined in 26 U.S.C. § 509. Its primary purpose was to assist young men and women residing in Crawford County, Ohio to obtain a college education by providing financial assistance in the form of annual scholarships.

As a private foundation, plaintiff is subject to the provisions of 26 U.S.C. § 4945, which provides for taxes of ten percent on certain taxable expenditures. A taxable expenditure is defined, in part, as any amount paid by a private foundation as a grant to an individual for the purpose of study. Section 4945(d)(3). However, the statute also provides that a grant which is awarded on an objective and non-discriminatory basis pursuant to a pre-approved selection procedure is exempt from taxation if it constitutes a scholarship and is used for study at a regular educational institution. 26 U.S.C. § 4945(g).

During the taxable years at issue, plaintiff made scholarship grants to the educational institution of its grant recipients in the following amounts: 1974—$32,500; 1975—$50,500; 1976—$68,250. On plaintiff's annual report to the Internal Revenue Service, Form 990–AR, the following payments were indicated: 1974—$57,465.75; 1975—$60,500; 1976—$65,189.60. In 1977, during an audit of plaintiff's tax returns, the IRS determined that the scholarship grants awarded during 1974, 1975, and 1976 constituted taxable expenditures because they had not been awarded pursuant to a selection procedure approved in advance by a delegate of the Secretary of the Treasury. Plaintiff conceded that it had not filed such an application prior to the selection of the recipients of the awards, as required by 26 U.S.C. § 4945(g), and promptly filed such an application. The Commissioner assessed taxes pursuant to section 4945(a) as follows: 1974—$4,101.09; 1975—$5,950.58; 1976—$7,555.62. Plaintiff paid the tax and interest in full and timely filed a claim for refund, which was disallowed.

The parties agree that the scholarship grants awarded by plaintiff in 1974–1976 were made pursuant to an objective and non-discriminatory procedure, that the scholarship amounts were properly excludable from the recipient's gross income under 26 U.S.C. § 117(a), and that the amounts were used solely for study at an

---

1. Section 501 provides in part:

   **Exemption from taxation.—** An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

   .    .    .    .    .

   (c) **List of exempt organizations.—**The following organizations are referred to in subsection (a):

   .    .    .    .    .

   (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h) ), and which does not participate in, or intervene in (including the publishing or distributing of statements, any political campaign on behalf of any candidate for public office.

   .    .    .    .    .

educational institution described in 26 U.S.C. § 170(b)(1)(A)(ii). The IRS also admits that had plaintiff's grant application procedures for 1974–1976 been filed prior to making the grants, they would have met the requirements of 26 U.S.C. § 4945(g).

This action involves the narrow issue of whether section 4945 was properly invoked by the Service to deny plaintiff an exemption for its scholarship grants awarded during the taxable years 1974–1976. The relevant portions of the statute are as follows:

(a) **Initial taxes.**—

(1) **On the foundation.**— There is hereby imposed on each taxable expenditure (as defined in subsection (d)) a tax equal to 10 percent of the amount thereof. The tax imposed by this paragraph shall be paid by the private foundation....

(b) **Additional taxes.**—

(1) **On the foundation.**— In any case in which an initial tax is imposed by subsection (a)(1) on a taxable expenditure and such expenditure is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of the amount of the expenditure. The tax imposed by this paragraph shall be paid by the private foundation....

(d) **Taxable expenditure.**— For purposes of this section, the term "taxable expenditure" means any amount paid or incurred by a private foundation—

(1) to carry on propaganda, or otherwise to attempt, to influence legislation, within the meaning of subsection (e),

(2) except as provided in subsection (f), to influence the outcome of any specific public election, or to carry on, directly or indirectly, any voter registration drive,

(3) as a grant to an individual for travel, study, or other similar purposes by such individual, unless such grant satisfies the requirements of subsection (g),

(4) as a grant to an organization (other than an organization described in paragraph (1), (2), or (3) of section 509(a)), unless the private foundation exercises expenditure responsibility with respect to such grant in accordance with subsection (h), or

(5) for any purpose other than one specified in section 170(c)(2)(B).

.    .    .    .    .

(g) **Individual grants.**— Subsection (d)(3) shall not apply to an individual grant awarded on an objective and non-discriminatory basis pursuant to a procedure approved in advance by the Secretary, if it is demonstrated to the satisfaction of the Secretary that—

(1) the grant constitutes a scholarship or fellowship grant which is subject to the provisions of section 117(a) and is to be used for study at an educational organization described in section 170(b)(1)(A)(ii),

(2) the grant constitutes a prize or award which is subject to the provisions of section 74(b), if the recipient of such prize or award is selected from the general public, or

(3) the purpose of the grant is to achieve a specific objective, produce a report or other similar product, or improve or enhance a literary, artistic, musical, scientific, teaching, or other similar capacity, skill, or talent of the grantee.

Thus, the statute provides that an individual grant will not be calculated as a taxable expenditure if it satisfies the following criteria:

1. It is awarded on an objective and non-discriminatory basis.

2. It is made pursuant to a procedure approved in advance by the Secretary and

3. It is a scholarship grant used for study at an approved educational organization or is a prize or award from which the recipient is selected from the general public or is to enhance a literary, musical, scientific or teaching skill of the grantee.

The parties agree that the scholarship grants at issue here were awarded on an objective and non-discriminatory basis and that they were used for study at an appropriate educational institution. The only criterion which the grants did not meet was that they were not awarded pursuant to a pre-approved procedure, although that same selection procedure has since been filed and approved.

Plaintiff's argument is that the filing procedure is merely ministerial or directory and that the filing requirement is neither necessary to effect the purpose of the statute nor does it relate to the essence of the statute:

> The Association contends that its objective and non-discriminatory grant procedure, its efforts to rely upon competent professional assistance and its prompt compliance with the statutory requirement for the grant procedure application following its discovery of that requirement constitutes substantial compliance with the provisions of I.R.C. § 4945(g). The Association did everything necessary to comply with the requirements of the law except the procedural act of filing the grant procedure application.

Plaintiff's brief at 10.

Defendant, on the other hand, argues that the fact that plaintiff's award granting procedures were proper did not relieve it of the burden of seeking advance approval as is mandated by the statute. It submits that the legislative history of the statute establishes that the requirement was specifically designed by Congress to curb past abuses of private foundations as a group, and therefore the filing requirement is the essence of the statutory provision. Defendant alleges that using a substantial compliance test would render the 10% and 100% penalties imposed by section 4945 a nullity.

Both plaintiff and defendant point to other provisions of the Internal Revenue Code where substantial compliance was held to apply or not apply, respectively, in support of their positions. The ultimate question, therefore, is whether the doctrine of substantial compliance may fairly be applied to the statute at issue. The question facing the Court is one of first impression.

On its face, section 4945 would appear to mandate that unless the objective and non-discriminatory selection procedures of a private foundation are approved by the Secretary in advance, any grants awarded to individuals will be subject to a 10% tax as an improper expenditure. In determining whether plaintiff has "substantially complied" with this law, the crucial inquiry is whether the pre-approval of selection procedures is a substantive measure in the statute or whether it is a mere ministerial filing requirement purely for administrative convenience, as plaintiff contends. The Court's focus, then, must be on Congressional intent in enacting this provision as demonstrated by its legislative history.

Section 4945 is a small part of a larger, major tax reformation in the area of private foundations, enacted as part of the Tax Reform Act of 1969. The purpose of this overall reformation of the private foundation taxation and reporting structure was to curb widespread abuses by private foundations of their tax exempt status:

> The permissible activities of private foundations desiring to preserve the benefits of tax exemption, as well as the benefits to their contributors, are substantially tightened to prevent self-dealing between the foundations and their substantial contributors, to require the distribution of income for charitable purposes, to limit their holdings of private businesses, to give assurance that their activities are restricted as provided by the exemption provisions of the tax laws, and to be sure that investments of these organizations are not jeopardized by financial speculation.

H.R.Rep. No. 91–413, 91st Cong. 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Ad. News 1645, 1648; S.Rep. No. 91–552, 91st Cong. 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Ad.News 2027, 2032 (hereinafter House or Senate Report at ＿＿.). Moreover, Congress believed that a tax

should be imposed when private foundations made expenditures for "activities that should not be carried on by exempt organizations," such as lobbying, electioneering, or grass roots campaigning. *Senate Report* at 2076. Of particular concern in the area of grant-making by private foundations was that existing law had failed to effectively limit the extent to which private foundations could award "educational grants to enable people to take vacations abroad, to have paid interludes between jobs, and to subsidize the preparation of materials furthering specific political viewpoints." *House Report* at 1677.

The House Committee concluded that more effective limitations needed to be placed on tax exempt funds and that more effective sanctions were in order. Prior penalties, the loss of tax exempt status and denial of charitable contribution deductions, were considered inequitable and seldom enforced. To remedy these abuses of the tax exempt status, Congress enacted a series of provisions designed to establish a comprehensive system of taxation and administration over tax exempt organizations. One of these provisions was section 4945, which provided for a 10% tax on all "taxable expenditures," including scholarship expenditures which were not excepted under section 4945(g). A second level tax of 100% was also to be imposed if the foundation failed to take action to "correct," to the extent possible, the earlier improper expenditure.

Grants in the form of educational scholarships to individuals could be made without incurring the 10% excise tax only if such awards were made on an objective and nondiscriminatory basis under a procedure approved in advance by the Secretary of the Treasury. The objective was that "expertise and fairness replace whim and personal relationships" in the scholarship selection procedures. *House Report* at 1679. As the Senate Committee stated,

The House bill also imposes sanctions upon the making of grants to individuals by private foundations unless the grantees are chosen in open competition or on some other objective and nondiscrimina-

tory basis, in accordance with procedures approved in advance by the Internal Revenue Service. This approval procedure does not contemplate specific approval of particular grant programs but instead one-time approval of a system of standards, procedures, and follow-up designed to achieve the intended degree of objectivity. Where the grants take the form of scholarships there will normally be available the relatively independent supervision of schools and colleges.

*Senate Report* at 2077. A strong indication that the pre-approval procedure was intended as a substantive measure of the law appears in the paragraph following the above quoted excerpt from the Senate Report: "[t]he scholarships, prizes, and other individual grants that a private foundation may make *must meet the standards described at the beginning of the preceding paragraph."* *Senate Report* at 2077–78 (emphasis added).

The abuses which prompted the tax reform measures and the preceding excerpt from the Senate Report indicate that the approval procedure was intended to provide a means of enforcing the Congressional mandate that private foundations distribute grants only in accordance with nondiscriminatory standards. The legislative history from various other tax reform provisions concerning private foundations is also helpful in viewing Congressional insight into the need for stricter regulation of those organizations. Along with section 4945, Congress enacted provisions governing the disclosure and publicity of the income and disbursements of private foundations. The purpose of these requirements was to provide the Internal Revenue Service with information sufficient to enforce the strengthened tax laws. *House Report* at 1681; *Senate Report* at 2080. Moreover, Congress intended that the disclosure of such information would aid state officials in regulating exempt organizations. Other changes in the law, such as notification of tax exempt status, were also designed to remove the Service's disadvantage in evaluating and administering the law due to lack

of information. In the words of the House Committee, "[y]our committee believes that it is not appropriate to continue to provide substantial tax benefits to organizations unless the organizations have provided the Internal Revenue Service with information as to their nature, purposes and activities." *House Report* at 1682–83.

While there is no authority on this issue directly on point, a few cases have confirmed the Court's perception of the Congressional approach to this matter. In *Jackson v. Statler Foundation*, 496 F.2d 623, 632 (2d Cir.1974), the Second Circuit, discussing the "sustained and detailed administrative relationship for enforcement of statutory standards" governing tax exempt foundations, found the provisions of section 4945 to be substantive limitations. After considering the purposes and history of the legislation in the context of racial discrimination, the court stated:

> Properly construed, these provisions are only further evidence of the instrusiveness of the regulatory scheme.

> Such an intrusive and detailed scheme was deemed necessary to prevent the use of foundations' assets for a wide range of private purposes, such as profit-taking, control of businesses, and nepotism, and to ensure that the fruits of exemption benefit the public.

> .    .    .    .    .

> As one commentator concludes, the "... Act's basic approach is to locate and maintain contact with the foundations...." Private Foundations under the Tax Reform Act of 1969, 7 Colum. J.Law & Soc.Prob. 240, 254 (1971).

*Id.* at 633.

In *Gladney v. Commissioner of Internal Revenue*, 745 F.2d 955 (5th Cir.1984), the statute at issue was 26 U.S.C. § 507(a), which imposes a tax upon an organization which files a notice that it intends to terminate its status as a private foundation. The statute, on its face, required notice before the termination could take effect. In reversing the tax court's holding that the sole legislative policy for the notice requirement was to permit the IRS to de-

termine the tax owed, the court found the requirement part of a larger statutory scheme intended to provide the Service with more information with which to administer the tax laws and to enhance the regulation of private foundations by the states. To serve those objectives, the Court found strict compliance with the notice requirement to be necessary. Addressing a "substantial compliance" argument, the Court held that the doctrine did not apply in the presence of clear legislative rationale for applying the notice requirement, and that "after the fact notification is not substantial compliance." *Gladney*, at 962–63.

Defendant relies heavily on the case of *German Society of Maryland, Inc. v. Commissioner of Internal Revenue*, 80 T.C. 741 (Tax Ct.1983), the facts of which are nearly identical to those in the case *sub judice*. German Society was a long recognized tax exempt private foundation engaged in the activity of awarding scholarship grants. Through the Society's inadvertence, the grant making procedures for the tax years 1974–1976 were not submitted to the IRS for approval until late 1976, and the section 4945 10% tax was assessed for those expenditures.

The Society argued that since it had corrected its failure to receive advance approval in accordance with section 4945, it should be relieved of liability for the 10% excise tax. Reviewing the legislative history and wording of the statute, the court observed that the statute contained no language indicating that the liability is conditional, and that the "clear implication is that the tax will be imposed regardless of subsequent actions by the foundation." *German Society*, at 744.

Plaintiff strenuously argues that *German Society* is not controlling in this action because the issue in that case was whether correction could avoid the tax and that the foundation did not argue, nor did the court address, the doctrine of prior substantial compliance. However, it would appear that although phrased in different terminology, the arguments made by the

foundation in *German Society* were substantially similar to those made by plaintiff:

> Petitioner's arguments that *its procedures were identical in all of the years at issue, that it did not engage in any improper activity, and that the penalty is therefore undeserved and unwarranted* does not fall on deaf ears. We understand the problems faced by foundations run by volunteers with little expertise in Federal taxation, and we realize that they often lead to inadvertent errors such as that involved here. Nonetheless, Congress enacted a statutory scheme which imposes an excise tax on those foundations that fail to obtain the approval required by section 4945(g). We are not free to disregard that mandate.

*Id.* at 746 (emphasis added). The Court finds the reasoning of *German Society* to be persuasive, and despite plaintiff's arguments to the contrary determines its holding to be dispositive in this matter. Even assuming that plaintiff is correct in its contention that *German Society* does not control the instant case, the Court's independent analysis of the legislative history of the statute provides ample basis for reaching the same result.

Aside from the legislative history of the statute, the tax regulations are also inconsistent with plaintiff's assertion that compliance with every requirement except seeking prior approval is sufficient to avoid imposition of the first level tax and that the Service itself considers this requirement to be merely directory. Regulation 4945–1, 26 C.F.R. § 53.4945–1(d)(3), provides:

> Correction for failure to obtain advance approval. Where an expenditure is taxable under section 4945(d)(3) only because of a failure to obtain advance approval of procedures with respect to grants as required by section 4945(g), correction may be accomplished by obtaining approval of the grant making procedures and establishing to the satisfaction of the Commissioner that:

> (i) no grant funds have been diverted to any use not in furtherance of a purpose specified in the grant;

> (ii) the grant making procedures instituted would have been approved if advance approval of such procedures had been properly requested; and

> (iii) where advance approval of grant making procedures is subsequently required, such approval will be properly requested.

This provision defining "correction" is precisely what plaintiff asks this Court to find to be "prior substantial compliance." Moreover, 26 C.F.R. § 53.4945–4 unequivocally states that "[s]ection 4945(g) requires that grants to individuals must be made pursuant to a procedure approved in advance." It goes on to establish the procedures required to obtain approval. These regulatory provisions belie plaintiff's assertions that the regulations demonstrate that the IRS does not believe the statute to be mandatory, simply because it provides for constructive approval of the grant making procedures after forty-five days of the filing. 26 C.F.R. § 53.4945–4(d)(3).

Plaintiff's arguments concerning the inequities of forcing it to pay a tax for an inadvertent error while needy students are deprived of scholarship funds might be more appealing were it not for plaintiff's mischaracterization of the statutory requirement. Plaintiff continually refers to the section 4945(g) requirement as a simple "filing" requirement. However, examination of the statute and its legislative history unequivocally demonstrates that the requirement is not a mere ministerial filing requirement made simply for the convenience of some administrator. Rather, it is a substantive requirement that the Secretary of the Treasury approve scholarship selection procedures in advance of making awards to ensure objectivity in the grant selection process. Plaintiff's inadvertent error was not in failing to file some superfluous administrative document; it was in failing to secure the required advance approval of its procedures.

Moreover, the major reforms in the laws governing the taxation of private founda-

tions was enacted effective January 1, 1970. The regulations implementing the procedures for obtaining approval of the selection process were adopted on October 30, 1972. This is not a case where plaintiff sought approval only a short time after the change in the law; plaintiff's inadvertent error was not discovered until five years after the regulations were promulgated and seven years after the legislation was passed. Plaintiff admits that it operated with the assistance of counsel and a certified public accountant. While plaintiff's omission was indisputably inadvertent, it is axiomatic that organizations are charged with cognizance of the changing laws which govern them, and at some point they must accept the penalty for their failure to abide by those laws. Plaintiff's uncontested assurances that it was not one of those tax exempt foundations at which the tax reforms were directed is irrelevant. The provisions of the law apply to every private foundation receiving tax benefits from the United States government.

Accordingly, the Court finds that plaintiff did not substantially comply with the law and that it made improper expenditures as clearly defined by statute and that it is liable for the first level tax imposed. The Clerk shall enter JUDGMENT for defendant.

IT IS SO ORDERED.