HANS S. MANNHEIMER CHARITABLE TRUST, FIRST
FIDELITY BANK, N.A., TRUSTEE, FORMERLY FIRST
NATIONAL STATE BANK OF NEW JERSEY, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 44909-86.     Filed July 12, 1989.

*Catherine Romania Mattera,* for the petitioner.
*Barbara Fazekas,* for the respondent.

RAUM, *Judge:* The Commissioner determined that petitioner, taxable as a private foundation, is liable for the 10-percent private foundation excise tax under section

4945(a)(1)[1] in the amounts of \$42,184 in 1981, \$41,205 in 1982, and \$26,173 in 1983, in respect of grants which it made to two other private foundations. The issue is whether such grants were "taxable expenditures" under section 4945(d)(4), which in turn depends upon whether petitioner exercised "expenditure responsibility" with respect to the grants within the meaning of section 4945(h). The case was submitted on the basis of a stipulation of facts.

Petitioner, the Hans S. Mannheimer Charitable Trust (Trust), was located in Newark, New Jersey, at the time it filed the petition herein. It was created to advance Hans S. Mannheimer's interests in the care and study of animals, especially primates. Pursuant to the terms of the agreement of trust, as amended, a portion of the trust income is to be paid to Animal Care Fund, Inc. (Animal Care), and the balance is to be paid to Mannheimer Primatological Foundation (Mannheimer Primatological). Both Animal Care and Mannheimer Primatological (grantees or donees) are and have been "not for profit" corporations classified as tax exempt organizations under section 501(c)(3). Both were established by Hans S. Mannheimer, as was petitioner.

Animal Care provides an animal shelter for the care and prevention of cruelty to animals. It is located in East Smithfield, Pennsylvania. Mannheimer Primatological is involved in the research and development of breeding programs for the purpose of preserving endangered species of nonhuman primates and is involved in the advancement and promotion of the study of the physical and behavioral structure and patterns of nonhuman primates. Mannheimer Primatological also provides assistance to charitable, scientific, or educational agencies or institutions. It is located in Homestead, Florida.

From 1979 to 1983 the following were the common members, managers, officers, and trustees of the aforesaid organizations:

---

[1]Unless otherwise indicated, all Code references and all section references are to the Internal Revenue Code as amended and in effect for the years in issue. All section references to the regulations are to the Private Foundation Excise Tax Regulations.

|  | Mannheimer Primatological Foundation | Animal Care Fund, Inc. | Hans S. Mannheimer Charitable Trust |
|---|---|---|---|
| Warren Lloyd Lewis | Trustee, President Manager | Trustee, Secretary, Member | Trustee |
| First Fidelity Bank, N.A. | --- | --- | Trustee |
| John C. Leeds | Trustee, Vice Pres. (1979-1982), Sec. (1983), Manager | Trustee, Treasurer, Member | Note—Mr. Leeds has been an Officer of First Fidelity Bank, N.A. |
| Lesley A. Sinclair | Trustee Pres. (1983), Manager | Trustee, President, Member | Trustee |

The parties have stipulated that, "in accordance with the express terms of the Trust, the following distributions were made by petitioner for the years 1981-1983":

| Year | Mannheimer Primatological Foundation | Animal Care Fund, Inc. |
|---|---|---|
| 1981 | $318,870.80 | $102,964.94 |
| 1982 | 301,208.84 | 110,836.29 |
| 1983 | 161,000.00 | 100,728.23 |

The parties have also stipulated that "All of the funds paid to the grantees * * * have been spent [by the grantees] for the proper purposes of the grant[s]." The Hans S. Mannheimer Charitable Trust, Mannheimer Primatological, and Animal Care have no direct or indirect dealings with or participation in political activities and specifically did not use the funds to carry on propaganda or otherwise to attempt to influence legislation or to influence the outcome of any specific public election or carry on a voter registration drive.

Pursuant to the requirements of section 6033, petitioner filed information returns, Forms 990-PF Return of Private Foundation, for each of the years in question, namely, 1981, 1982, and 1983. On each of these returns, the responses to the questions relating to the section 4945 taxes on taxable expenditures were incorrect. Item 14(a)(4) on each Form 990-PF called for an answer to the following question: "During the year did you pay or incur any amount to provide a grant to an organization, other than a charitable, etc., organization described in section 509(a)(1), (2) or (3)?" Petitioner's response to this question for each of the years

Petitioner's response to this question for each of the years at issue was "No." The correct answer was "Yes," since Animal Care and Mannheimer Primatological received monies from petitioner but are not section 509(a)(1), (2), or (3) organizations. As a result of the incorrect answer to item 14(a)(4), the related questions in 14(b) and (c) were marked "N/A." The correct answer to both 14(b) and 14(c) was "Yes" rather than "N/A," and a "Yes" answer to 14(c) would have called for the attachment of the "statement required." No such statement was attached in any of the three returns.

Such required statement obviously referred to the provisions of section 53.4945-5(d)(1) and (2) of the regulations, which provide that the foundation must make a report "with respect to *each grant.*"[2] (Emphasis added.) In addition to supplying the name and address of the grantee, the grantor was obligated to set forth detailed information in that report as to a number of pertinent matters, including the date and the amount of each grant, the purposes of the grant, and the results of any verification of the grantee's reports to the grantor. All of the requirements could be satisfied by submitting with the foundation's return a report from the grantee if the required information is contained in such report. Although petitioner's returns did identify Mannheimer Primatological and Animal Care as the grantees, and did report an amount paid to each of them, they did not otherwise supply the information asked for in the "statement" required. For example, although the returns reported the *aggregate* amounts paid to each of the two named grantees, there was no breakdown or even any clue as to the purpose for which the payments or any specified portion thereof was made.

Animal Care filed information returns, Forms 990-PF, on a fiscal year basis for the years ending September 30, 1981, 1982, 1983, and 1984. Mannheimer Primatological also filed information returns, Forms 990-PF, for the years at issue on a calendar year basis. In their returns, the donees stated

---

[2]Although the instrument establishing petitioner provided for the payment of trust income to Animal Care and Mannheimer Primatological, it is by no means clear whether the payments made from time to time to either of them during any tax year should be characterized as separate grants, particularly where any specific payment may have been made for a designated purpose, as was the case here in a number of instances.

etc." and specifically listed the aggregate amount received from petitioner.[3]

The Commissioner determined that petitioner was liable for the 10-percent tax imposed by section 4945(a)(1). Whether he erred in that determination, as contended by petitioner, depends upon the applicability of section 4945(d) and (h), as will be developed more fully hereinafter. Preliminarily, it is important that section 4945 be considered in proper context.

Section 4945 first appeared in the Code in 1969. It was part of subchapter A of an entirely new chapter 42 that was added to the Code by the Tax Reform Act of 1969.[4] Subchapter A of chapter 42 dealt exclusively with private foundations. One can hardly read the extensive and highly detailed new provisions of subchapter A (sections 4940-4948) without concluding that Congress was determined to put an end, as far as it reasonably could, to the abuses and potential abuses associated with private foundations. As the Report of the House Committee on Ways and Means, H. Rept. 91-413 at 39 (1969) stated:

your committee has determined that organizations should not receive substantial and continuing tax benefits in exchange for the promise of their contributions to society, and then avoid the carrying out of those responsibilities. * * *

Accord, Senate Finance Committee, S. Rept. 91-552 at 55 (1969), 1969-3 C.B. 423, 459.

The 10-percent excise imposed on each taxable expenditure by section 4945(a)(1), involved in this case, was merely a first step. Section 4945(a)(2) imposes a 2½-percent tax on management. The (a)(1) and the (a)(2) taxes are sometimes referred to as the "first tier" excise taxes. A pair of second tier of excise taxes captioned "additional taxes," of much greater severity, are imposed by section 4945(b)(1) and (2). The "additional tax" in (b)(1) is upon the foundation at 100

---

[3]Animal Care also provided tables for its fiscal years 1980-81 and 1981-82 containing a breakdown of the aggregate amount received from petitioner. The tables showed the dates, the amounts, and in some cases the purpose for which the money received from petitioner was to be used. For fiscal years 1982-83 and 1983-84, Animal Care provided only the aggregate amount received from petitioner with no indication of whether the funds were received in a lump sum or in installments and provided no indication, beyond a general list of expenses of how the funds were used. Mannheimer Primatological provided only aggregate amounts for all the years at issue.

[4]Sec. 101(b) of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 512.

The "additional tax" in (b)(1) is upon the foundation at 100 percent of each taxable expenditure, and in (b)(2) upon management at 50 percent.[5] The (b)(1) tax is imposed, however, only where the taxable expenditure is not "corrected" within the taxable period, a word that is defined in section 4945(i)(1). And the (b)(2) tax is imposed on any foundation manager who refuses to agree to part or all of the correction where there is a (b)(1) tax. Subchapter C is concerned with the abatement of second tier taxes, both (b)(1) and (b)(2), where there is correction. However, the "first tier" taxes, (a)(1) and (a)(2), are mandatory and may not be avoided by subsequent remedial action by the Foundation.[6] *German Society of Maryland v. Commissioner,* 80 T.C. 741, 744 (1983). The relationship between the first and second tier taxes was characterized by this Court in that case as follows (80 T.C. at 745):

the initial tax is a spur designed to remind the foundation that it has been remiss. Subsequent compliance with the rules enables the foundation to avoid the real whip of section 4945(b)(1), but cannot undo the punishment for its initial infraction.

It is not feasible within the limits of this opinion even to outline the scope of all the extensive and comprehensive provisions of subchapter A to show the nature of the Congressional concern about preventing abuses associated with private foundations.[7] It is sufficient here to note, as did the court in *Jackson v. Statler Foundation,* 496 F.2d

---

[5]However, as to the taxes on management, sec. 4945(c) fixed a maximum of $5,000 on the (a)(2) tax with respect to any one taxable expenditure and $10,000 on the (b)(2) tax with respect to any one taxable expenditure.

[6]Subch. C is now designated as subch. D, and certain amendments, not applicable to the tax years involved herein, were made in 1984 and 1987. Sec. 305(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 783; sec. 10712(b)(2) of the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330-1, 1330-467. The 1984 amendment provides for the abatement of first tier taxes in certain restricted circumstances, effective for taxable events occurring after Dec. 31, 1984.

[7]However, a mere recital of the captions of the highly detailed and complex provisions of secs. 4940-4945 may give some idea of the range of the matters included in subch. A. They are as follows:

Sec. 4940. Excise tax based on investment income.
Sec. 4941. Taxes on self-dealing.
Sec. 4942. Taxes on failure to distribute income.
Sec. 4943. Taxes on excess business holdings.
Sec. 4944. Taxes on investments which jeopardize charitable purpose.
Sec. 4945. Taxes on taxable expenditures.

623, 633 (2d Cir. 1974), that while section 4945 is intrusive, it is also necessary:

Congress attempted in section 4945 to prevent * * * the use of foundation assets for private purposes.

*     *     *     *     *     *     *

Such an intrusive and detailed scheme was deemed necessary to prevent the use of foundations' assets for a wide range of private purposes, * * * and to ensure that the fruits of exemption benefit the public.

Very extensive and detailed regulations have been promulgated by the Treasury to implement section 4945, involved herein. By complying with these regulations and the new statutory provisions, a private foundation can avoid triggering these new taxes. To the extent that such regulations relate to those statutory provisions involved in this case (particularly, section 4945(d)(4) and (h)), they will be dealt with hereinafter. We now proceed to consider the specific statutory provisions and the related regulations as applied to the facts here.

Section 4945(a)(1) imposes a 10-percent excise tax on each "taxable expenditure" made by a private foundation.[8] A "taxable expenditure" is defined in section 4945(d). As in effect during the years at issue, section 4945(d) provided:

SEC. 4945. TAXES ON TAXABLE EXPENDITURES.

(d) TAXABLE EXPENDITURE.—For purposes of this section, the term "taxable expenditure" means any amount paid or incurred by a private foundation—

(1) to carry on propaganda, or otherwise to attempt, to influence legislation, within the meaning of subsection (e),

(2) except as provided in subsection (f), to influence the outcome of any specific public election, or to carry on, directly or indirectly, any voter registration drive,

(3) as a grant to an individual for travel, study, or other similar purposes by such individual, unless such grant satisfies the requirements of subsection (g),

(4) as a grant to an organization (other than an organization described in paragraph (1), (2), or (3) of section 509(a)) unless the

---

[8]Although petitioner does not fit precisely within the sec. 509 definition of a private foundation, the sec. 4945 excise tax on private foundations is made applicable to petitioner by reason of sec. 4947 as a consequence of the stipulation of the parties that petitioner was "a trust described in I.R.C. sec. 4947(a)(1)."

private foundation exercises expenditure responsibility with respect to such grant in accordance with subsection (h) * * *

Paragraphs (1), (2), and (3) of subsection (d) are not involved here, and as to paragraph (4), it is undisputed that the two grantees are not and have not been organizations described in paragraph (1), (2), or (3) of section 509(a). Thus, in order to avoid the excise tax imposed by section 4945(a)(1), petitioner must show that, in accordance with subsection (h) of section 4945, it exercised "expenditure responsibility," over the funds distributed to the two grantees in 1981, 1982, and 1983.

Section 4945(h) defines "expenditure responsibility" as follows:

SEC. 4945(h). EXPENDITURE RESPONSIBILITY.—The expenditure responsibility referred to in subsection (d)(4) means that the private foundation is responsible to exert all reasonable efforts and to establish adequate procedures—

(1) to see that the grant is spent solely for the purpose for which made,

(2) to obtain full and complete reports from the grantee on how the funds are spent, and

(3) to make full and detailed reports with respect to such expenditures to the Secretary.

Each paragraph under subsection (h) of section 4945 requires a grantor to take affirmative action in order to avoid the 10-percent excise tax imposed by section 4945(a)(1). Moreover, the three requirements are in the conjunctive; petitioner must satisfy all three. Although the regulations (section 53.4945-5(b)(1)) make clear that a private foundation is not an insurer of the activity of the organization to which it makes a grant, section 4945(h) of the Code nevertheless requires that a private foundation, at the very least, "exert all reasonable efforts and * * * establish adequate procedures" to see that the three requirements are met. We hold that petitioner has failed to show that it "exert[ed] all reasonable efforts and * * * establish[ed] adequate procedures" to comply with any one of the three requirements or that it has in fact complied with any one of those requirements. We consider each of them separately.

*Section 4945(h)(1).*

Section 4945(h)(1) requires a grantor to take affirmative steps "to see that the grant is spent solely for the purposes for which [the grant was] made." The regulations provide that as a first step, prior to making a grant, a private foundation should conduct a limited inquiry concerning the potential grantee and, as a second step, must obtain a written commitment signed by an appropriate officer, director, or trustee of the grantee organization. The detailed provisions relating to the first step are set forth in section 53.4945-5(b)(2)), which is captioned "Pre-grant inquiry," and the second in section 53.4945-5(b)(3), which is captioned "Terms of grants." We find that, although petitioner did not run afoul of the requirements of the first, it completely failed to comply with those of the second, and thus failed to meet the demands of section 4945(h)(1) of the statute.

A. *Pre-grant Inquiry.* The pre-grant inquiry is described by section 53.4945-5(b)(2)(i) of the regulations as a "limited inquiry" which should concern itself with the identity, prior history, and experience of the grantee organization and its managers and any knowledge which the private foundation has concerning management, activities, and practices of the grantee organization. The scope of the pre-grant inquiry will vary from case to case "depending upon the size and purpose of the grant, the period over which it is to be paid, and the prior experience which the grantor has had with respect to the capacity of the grantee to use the grant for the proper purposes." Sec. 53.4945-5(b)(2)(i).

Petitioner was created in 1969 by Hans S. Mannheimer to advance his interests in the care and study of animals by distributing funds to Animal Care and Mannheimer Primatological, two organizations created by him in 1967 and 1968, respectively. Petitioner and the two grantees share at least two common trustees—Warren Lloyd Lewis and Lesley A. Sinclair—who would have had some personal knowledge of the activities of all three organizations, although the extent of their involvement is unclear from the record. Further, both Animal Care and Mannheimer Primatological have received funds from petitioner in the past and these funds have been spent for the proper purposes of the grant. Under these circumstances, we hold

that petitioner had sufficient information about the two grantees to satisfy the limited pre-grant inquiry described in section 53.4945-5(b)(2)(i) of the regulations.

B. *Written Commitment.* Section 53.4945-5(b)(3) of the regulations states that "a private foundation *must* require that each grant to an organization, * * * *be made subject to a written commitment* signed by an appropriate officer, director or trustee of the grantee organization." (Emphasis added.) The prescribed nature and content of that commitment are then set forth in detail as follows:

Such commitment *must include an agreement* by the grantee—

(i) To repay any portion of the amount granted which is not used for the purposes of the grant,

(ii) To submit full and complete annual reports on the manner in which the funds are spent and the progress made in accomplishing the purposes of the grant, except as provided in paragraph (c)(2) of this section,

(iii) To maintain records of receipts and expenditures and to make its books and records available to the grantor at reasonable times, and

(iv) Not to use any of the funds—

(a) To carry on propaganda, or otherwise to attempt, to influence legislation (within the meaning of section 4945(d)(1)),

(b) To influence the outcome of any specific public election, or to carry on, directly or indirectly, any voter registration drive (within the meaning of section 4945(d)(2)), or

(c) To make any grant which does not comply with the requirements of section 4945(d)(3) or (4), or

(d) To undertake any activity for any purpose other than one specified in section 170(c)(2)(B).

The agreement must also clearly specify the purposes of the grant. Such purposes may include contributing for capital endowment, for the purchase of capital equipment, or for general support provided that neither the grants nor the income therefrom may be used for purposes other than those described in section 170(c)(2)(B).

Moreover, section 53.4945-5(d)(3)(i) provides that the foundation shall make available to the IRS at the foundation's principal office a copy of the foregoing required agreement "covering each 'expenditure responsibility' grant made during the taxable year."

Thus, petitioner bears the burden of showing that all grants were made subject to a written agreement which met the content requirements of section 53.4945-5(b)(3) and that all such written agreements were made available to the IRS

for inspection at petitioner's principal office pursuant to section 53.4945-5(d)(3)(i). This petitioner has failed to do.

Petitioner contends that it "more than adequately fulfilled" the written commitment requirement "through numerous documents executed by officers, directors, or trustees and exchanged by and circulated among the parties including the Agreement of Trust, certificates of incorporation (specifically stating the corporation would not make any taxable expenditures), bylaws, minutes, detailed monthly and annual reports and information returns." However, there is no evidence before us that any of these documents contained the agreements required by section 53.4945-5(b)(3) of the regulations, or that any of them was made available for inspection at petitioner's principal office, as required by section 53.4945-5(d)(3)(i). The only such documents in evidence are the Trust instrument (with amendments) establishing petitioner and the information returns (Forms 990-PF) for the years involved on behalf of petitioner and the two grantees. They do not contain the commitments required by section 53.4945-5(b)(3) of the regulations.

That there were not in fact any such written commitments as were required by the regulations emerges quite plainly from a stipulated affidavit of one of the trustees to the effect that he and the "other trustees and officers of the grantees * * * have always been willing to provide the form of written commitment deemed required." And in an obvious attempt to belittle the failure to comply with the requirements of the regulations, the affidavit states further that "any non-compliance was entirely technical." But such noncompliance can hardly be characterized as merely "technical." Thus, even if some sort of "commitment" on the part of the grantees could be implied on the basis of the materials in evidence, we have no way of knowing whether such "commitments" included even an informal undertaking to repay any grant or portion thereof that is not in fact used for purposes of the grant. The commitment to repay in such circumstances goes to the very heart of the Congressional objective of curbing abuses associated with private foundations.

Petitioner also seems to argue that somehow or other the existence of the required commitment is established by the fact that there were common officers, directors, and trustees of petitioner and the two grantees, and that they "obtained and exchanged personal knowledge in their various capacities." How this circumstance can satisfy the requirement for a written commitment available for inspection at petitioner's principal office (as required by section 53.4945-5(d)(3)) completely eludes us.

Petitioner also argues that since the funds received by grantees from petitioner were spent appropriately, no harm was done. However, "Section 4945(a)(1) states simply that a tax is 'hereby imposed' on the taxable expenditure; unlike section 4945(b)(1), it contains no language indicating that the liability is conditional." *German Society of Maryland, Inc. v. Commissioner*, 80 T.C. at 744. Where a grantor fails to satisfy any or all of the expenditure responsibility requirements of section 4945(h), the section 4945(a)(1) excise tax is mandatory regardless of the harm or lack thereof resulting from the failure. Petitioner did not obtain the required agreements from the two grantees, nor did it introduce evidence of efforts made by it to obtain the written agreements or otherwise see that the grants were spent solely for the purposes for which made. We hold that petitioner has failed to carry its burden of showing that it exercised "expenditure responsibility" pursuant to section 4945(h)(1).

*Section 4945(h)(2).*

Section 4945(h)(2) of the Code requires the foundation to exert all reasonable efforts and to establish adequate procedures "to obtain full and complete reports from the grantee on how the funds are spent." And the regulations, in section 53.4945-5(c)(1), (2), (3), and (4), contain highly specific provisions calculated to give meaningful effect to section 4945(h)(2) of the Code.

Notwithstanding petitioner's representations on brief that the grantees "accurately maintained and kept current its books and records" and that "full and detailed reports * * * were made by the grantees to the grantor," the evidence completely fails to support such bold asser-

tions. They may or may not be true, but the record is barren of any proof to that effect. We need not belabor the point further—even though we could point out that petitioner's position in respect of section 4945(h)(2) is fatally defective in other respects under the statute and regulations.

*Section 4945(h)(3).*

Section 4945(h)(3) imposes a duty upon petitioner "to make full and detailed reports with respect to [its] * * * expenditures to the Secretary." And section 53.4945-5(d)(2) of the regulations explains in detail what such a report should contain, as follows:

(2) *Contents of report.* The report required by this paragraph shall include the following information:
(i) The name and address of the grantee,
(ii) The date and amount of the grant,
(iii) The purpose of the grant,
(iv) The amounts expended by the grantee (based upon the most recent report received from the grantee),
(v) Whether the grantee has diverted any portion of the funds (or the income therefrom in the case of an endowment grant) from the purpose of the grant (to the knowledge of the grantor),
(vi) The dates of any reports received from the grantee, and
(vii) The date and results of any verification of the grantee's reports undertaken pursuant to and to the extent required under paragraph (c)(1) of this section by the grantor or by others at the direction of the grantor.

It is undisputed in petitioner's brief that the information required by the statute and the regulations was not in petitioner's information returns, nor was it submitted to the Secretary in a separate statement. It is also undisputed, not only that the questions on petitioner's returns relating to section 4945 taxes on taxable expenditures (questions 14(a)(4), 14(b), and 14(c)) were answered incorrectly but also, as pointed out above, that the returns failed to include the attached statement required in connection with question 14(c). However, petitioner's returns did contain the name, address, and aggregate amount of money distributed to each grantee for each of the years at issue. As to the purpose for which the grants were made, petitioner merely stated, on each return that it was "[t]o pay net income to Mannheimer Primatological Foundation and Animal Care."

Such a summary or conclusory statement hardly qualifies even as substantial compliance with the requirements calling for the specific items of information meticulously set forth in subparagraphs (i) through (vii) listed above.

Petitioner argues, however, that it was not necessary to include all of the required information in its returns because "the Internal Revenue Service was advised * * * of the expenditure, to whom and the purpose for which it was made and had in its possession the donees' returns, thus the Service was given sufficient information to trace, with little effort, the expenditure and insure compliance." In support of this argument, petitioner attempts to draw an analogy between section 4945 and section 6501(e).

Section 6501(e) replaces the section 6501(a) general income tax 3-year statute of limitations with a 6-year period if "the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." This extended statute of limitations period within which the Commissioner may make an assessment can be avoided if, pursuant to section 6501(e)(1)(A)(ii), the taxpayer discloses the omission on the return or in a statement attached to the return "in a manner adequate to *apprise* the Secretary of the nature and amount of such item." (Emphasis added). "[T]his does not mean simply a 'clue' which would be sufficient to intrigue a Sherlock Holmes" as to the existence of the omitted income. *Quick's Trust v. Commissioner,* 54 T.C. 1336, 1347 (1970), affd. per curiam 444 F.2d 90 (8th Cir. 1971); cf. *Colony, Inc. v. Commissioner,* 357 U.S. 28 (1958). And, in some circumstances, a related tax return may be considered. See, e.g., *Benderoff v. United States,* 398 F.2d 132 (8th Cir. 1968); *Davenport v. Commissioner,* 48 T.C. 921, 928 (1967); *Roschuni v. Commissioner,* 44 T.C. 80, 84 (1965); *Rose v. Commissioner,* 24 T.C. 755, 769 (1955). Petitioner argues that its returns similarly provided information as to the identities of grantees; thus, the tax returns of the grantees should be considered by the Commissioner when determining whether the section 4945 "report making" requirements have been satisfied. The

point is superficially appealing, but on careful examination, we find it thoroughly unsound.

Section 6501(e) and the cases thereunder are inapplicable to the present situation. Section 6501(e)(1)(A)(ii) requires only that the taxpayer "apprise" the Secretary of the nature and amount of the omitted income. In contrast to this statute of limitations provision, section 4945(h)(3) requires "full and detailed reports" to be submitted to the Secretary. This was not done.

Moreover, the present case arises in the context of an elaborate and comprehensive set of statutory provisions relating exclusively to private foundations which discloses a Congressional intent to "tighten" the law with respect to such foundations. See *German Society of Maryland v. Commissioner*, 80 T.C. at 743. We are satisfied that Congress did not expect those provisions to be applied loosely. We do not accept the notion that the tax here in issue can be avoided merely by petitioner's disclosure of the names and addresses of the grantees in its returns. We do not understand Congress to have intended to require the IRS to conduct a fishing expedition into the returns of the grantees to obtain at most only some of the information that petitioner itself was directly obligated to report to the IRS.

We also note that had the Secretary even followed the "clue" (i.e., names and addresses of the two grantees) and obtained the grantees' returns from presumably different IRS service centers (Animal Care and Mannheimer Primatological were located in Pennsylvania and Florida, respectively), he still would not have obtained all of the information required by section 53.4945(d)(1) and (2) of the regulations. Among other difficulties that would be encountered in attempting to extract the required information from the grantees' returns is the fact that substantial amounts were received by them from sources other than petitioner in the form of contributions, gifts, fees, etc. It is thus impossible in all of the returns of Mannheimer Primatological and some of the returns of Animal Care to correlate the amounts received from petitioner with any of the expenditures made by the grantees, although in the case of the remaining returns of Animal Care it is possible to

make such correlation but only with respect to some of the payments. Furthermore, wholly apart from what the IRS might have been able to uncover from the grantees' returns, petitioner's failure to make the required reports to the IRS left unrevealed not only a statement as to the purpose of the grants, but also any information with respect to whatever actions, if any, that petitioner may have taken to verify the grantees' reports, as required by section 53.4945-5(d)(2)(iii) and (vii) of the regulations quoted *supra*, p. 47. We totally reject not only petitioner's contention that the returns of the grantees, which the Secretary would have to ferret out, constituted reports which petitioner itself was required to make, but also any implication from such contention that the grantees' returns contained all the significant information that petitioner was required to supply in *its* reports to the IRS.

In sum, we find that petitioner has not carried its burden of showing that it satisfied even one of three requirements of section 4945(h) of the Code in respect of its "expenditure responsibility" which was necessary pursuant to section 4945(d)(4) to relieve it of tax on "taxable expenditures."

The conclusion that we thus reach is not affected by a 1984 amendment to section 4945(d)(4) upon which petitioner seems to rely.[9] Apart from other possible impediments here, that amendment is applicable only with respect to grants made after December 31, 1984 (sec. 302(c), 98 Stat. 779, 781). It has no relevance to petitioner's years 1981, 1982, and 1983 that are before us in this case.

---

Throughout petitioner's briefs there is a recurring note that its failure to comply with the statute was "technical," that in any event there was "substantial compliance," that the repeated incorrect answers in its three successive annual returns were merely the result of "oversight," "inadvertance," etc. None of these points, if they can seriously be

---

[9]Sec. 4945(d)(4) was amended by sec. 302(b) of the Deficit Reduction Act of 1984 of Pub. L. 98-369, 98 Stat. 494, 780. Section 4945(d)(4), as amended, reads as follows:

(4) as a grant to an organization unless—

(A) such organization is described in paragraph (1), (2), or (3) of section 509(a) or is an exempt operating foundation (as defined in section 4940(d)(2)), or

(B) the private foundation exercises expenditure responsibility with respect to such grant in accordance with subsection (h), or

considered as such, has any validity. Section 4945(h) reflects a Congressional determination to leave no loophole by imposing strict and detailed conditions to make sure that a private foundation's grants would not be used for proscribed purposes.

We are aware that petitioner and its two grantees were the creatures of Hans S. Mannheimer, established for the purpose of promoting his interests in what could plainly qualify as tax-exempt fields. And it could well be that they did not engage in any activities that could fairly be characterized as the kind of abuses that gave rise to the Congressional concern reflected in section 4945. However, Congress was obviously fed up with widespread abusive practices by private foundations, and it reacted by enacting extensive and strict provisions that it thought were necessary to put an end to such practices. Thus, although it is conceivable that petitioner may not have been "guilty" of any such abuses, it was nevertheless covered by and subject to the provisions that Congress enacted. In short, this may be but another instance of where "a legislature seeking to catch a particular abuse may find it necessary to cast a wider net." *Commissioner v. Pepsi-Cola Niagara Bottling Corp.,* 399 F.2d 390, 392 (2d Cir. 1968). Petitioner had the opportunity of avoiding the tax by complying with the statutory requirements which were deliberately intended to be strict and the regulations carrying out the legislative purpose. Petitioner failed to do so and of necessity must take the consequences. What we said on another occasion in an entirely different context is also pertinent here: "We need not speculate upon whether Congress, if it had given consideration to the unusual kind of situation before us might have drawn a more sophisticated type of line so as to produce a result favorable to [petitioner]. The point is that it chose to legislate in terms of a hard and fast rule." *Wiese v. Commissioner,* T.C. Memo. 1976-362, 35 TCM 1641, 1652, 45 P-H Memo T.C. par. 76,362 at 76-1617, 76-1628 (1976), affd. per curiam *Anderson v. Commissioner,* 614 F.2d 535 (5th Cir. 1980), cert. denied 449 U.S. 841 (1980). Similarly in the present case, we have no alternative but to follow the all-embracing provisions enacted that were so obviously intended to apply to every private foundation. As was

stated by the District Court in *John Q. Shunk Association, Inc. v. United States,* 626 F. Supp. 564, 571 (S. D. Ohio 1985), in applying other provisions of section 4945, while recognizing that "[the] plaintiff's omission was indisputably inadvertent":

Plaintiff's uncontested assurances that it was not one of those tax exempt foundations at which the tax reforms were directed is irrelevant. The provisions of the law apply to every private foundation receiving tax benefits from the United States government.

A like result is required here.

*Decision will be entered for the respondent.*